### CUNNINGHAM v. SETTEGAST et al. *
(No. 1894.)

Court of Civil Appeals of Texas. Beaumont. Jan. 31, 1930.

Rehearing Denied Feb. 19, 1930.

King, Wood & Morrow, and Wm. E. Loose, all of Houston, for appellant.

J. W. Lockett, of Houston, for appellees.

WALKER, J. This suit was instituted by appellees by the usual allegations of trespass to try title against appellant to recover 81.52 acres off the east side of Lot 2 of the A. T. Morse section No. 3 in Harris county, as subdivided by J. E. Foster, and as shown upon the plat of said subdivision recorded in volume 15, p. 83, Harris County Deed Records. Appellant answered by pleas of general and special demurrers, not guilty, general denial, and the different pleas of limitation. By way of cross-action he pleaded in trespass to try

*Appellant's second motion for rehearing denied March 12, 1930.

title against appellees for the title and possession of lot 3 as shown by the Foster plat and subdivision of the Morse section No. 3. Appellees filed no answer against appellant's cross-action. By a regular chain of title appellees established title in themselves in and to lot No. 2, as described in their petition, and appellant established title in himself to lot 3. As we understand the record, there was no issue as to title; it clearly appearing that appellees, under their evidence, owned lot 2 and appellant, under his evidence, owned lot 3. The patent field notes to section 3 described that section as follows:

"Beginning at the N. W. cor. of J. B. Murphy's survey at a mound in prairie; Thence south 1,344 varas along the W. line of said survey to the S. W. cor.; Thence west 1,894 varas to a mound in prairie passing N. W. of section No. 2 at 1,668 vrs; Thence north 2,-223 varas to a mound in prairie; Thence east 1,126 varas to a mound on W. line of Talbot Labor; Thence south 779 varas to S. W. cor. of said Labor; Thence east 1,000 varas to the S. E. cor. of said Labor; Thence south 100 varas to N. line of J. B. Murphy; Thence west 232 varas to place of beginning."

The Foster plat identifies this section, as it relates to other surveys, as follows: The patent call "thence north 2,223 varas to a mound in prairie" carries the west line of this section to the south line of the H. H. Cone survey, and establishes the northwest corner of this section in the south line of that survey. At that point the plat indicates the Cone survey. The plat identifies the patent call "thence east 1126 varas to a mound on west line of Talbot Labor" as a common line with the south line of the H. H. Cone survey, establishing a corner for section 3 in the west line of the Talbot Labor, the same being a common corner with the southeast corner of the Cone, as indicated by the plat. The plat then proceeds to locate the east boundary lines of the section in relation to the Talbot Labor and the J. B. Murphy survey, as called for in the field notes of the patent.

By the patent calls the south boundary line of section 3 is 1,894 varas long. The Foster plat locates three lots upon the south boundary line of this section, to wit, lot No. 1 in the southwest corner of the section; immediately east of lot No. 1 lies lot No. 2; and immediately east of lot No. 2 lies lot No. 3, being in the southeast corner of the section. The plat makes the south boundary lines of each of these three lots 631⅓ varas long, that is, one-third of the total length of the south boundary line of the section. The partition lines between these lots run at right angles with the south boundary line, making each of these three lots a rectangle 893⅓ varas long north and south and 631⅓ varas long east and west. In describing their lot 2, appellees located it in relation to the southwest corner of the Murphy as follows:

"Beginning on the south line of said survey No. 3 and the north line of survey No. 2 at a point which is 631⅓ varas west of the southwest corner of the J. B. Murphy Survey, which southwest corner of the J. B. Murphy Survey is marked by an iron pin in fence corner and is the established and recognized southwest corner of said J. B. Murphy Survey as originally located, and which beginning point is here designated as the southeast corner of said Lot No. 2 of the subdivision of said Survey No. 3 of said subdivision."

Having thus located the beginning corner, appellees then described their lot No. 2 by the same calls for course and distance as shown upon the plat. Appellees' chain of title merely identifies their land as being lot No. 2, as shown by the J. E. Foster plat.

Appellant, in his cross-action against appellees, described lot No. 3 as follows:

"Beginning at an iron pipe in fence corner, being the southwest corner of the W. J. Fox Survey, and the Southeast corner of H. T. & B. R. R. Section No. 3; Thence west along fence line on the south line of said Section No. 3 a distance of 642 feet to an iron pipe in fence corner on the Northeast line of B. B. B. & C. R. R. Section No. 8; Thence with fence line on the Northeast lines of B. B. B. & C. R. R. Sections 8 and 7, at 727.6 feet pass iron pipe the North corner of B. B. B. & C. R. R. Sec. No. 8 and the East corner of B. B. B. & C. Section No. 7, in all 1,572.6 feet to an iron pipe the southwest corner of said Lot No. 3; thence North 1,377.6 feet to an iron pipe the northwest corner of said Lot No. 3; and the Northeast corner of Lot No. 2 on the South line of Lot No. 5; thence East with the South line Lot No. 5 a distance of 1,753 feet to an iron pipe the Northeast corner of Lot No. 3, and the southeast corner of Lot No. 5, and on the west line of the W. J. Fox survey; thence South along the fence on the West line of the W. J. Fox Survey 2489.6 feet to the place of beginning, being the same property conveyed to R. W. Brahan by H. A. Gillette, by deed dated July 18th 1919, recorded in Vol. 421, page 391, of the Deed Records of Harris County, Texas."

His first nine deeds under Foster described his land as being lot 3, as shown upon the Foster plat. But the George D. Brown heirs, holding under the ninth deed, in their deed to H. A. Gillette dated the 12th day of July, 1919, described the land as appellant described it in his cross-action. Gillette deeded the land to Brahan and Brahan to appellant by this same description.

Appellees offered no verbal testimony in support of their claim. They made no effort to locate upon the ground the "iron pin in fence corner" pleaded by them, nor did they

seek to identify any other locative call. They thus failed to locate upon the ground the Murphy southwest corner. They did nothing more than to introduce their chain of title by which section 3 was tied to the Cone survey on the north and the Talbot and Murphy surveys on the east, and the Foster plat showing the subdivision of section No. 3. Appellant offered no testimony identifying the description of his land, as given in his cross-action, but the evidence was sufficient to identify, as a matter of law, the land sued for as being identical with lot 3 shown upon the Foster plat. He offered testimony that he had surveyed his land, and had built a fence upon the lines and corners established by his surveyor, but he offered no testimony locating this fence upon the ground. There was no testimony from any source locating the Fox survey, called for by appellant's description.

The trial was to the court without a jury, and judgment rendered decreeing to appellees lot 2, as shown upon the Foster plat, and to appellant lot 3, as shown upon the Foster plat. The court then proceeded further to tie, by a judicial decree, section 3 to the Murphy survey, making the east line of section 3 a common line with the Murphy west line, and the southeast corner of section 3 a common corner with the Murphy southwest corner. Thus tying section 3 to the Murphy survey, the trial court proceeded further to locate appellees' Lot No. 2 631⅓ varas west of the Murphy west boundary line and to locate the east boundary line of lot 2 631⅓ varas west of and parallel with the Murphy west line, and then proceeded further to locate appellant's lot 3 between appellees' lot 2 and the Murphy. The effect of the judgment of the trial court was to make this a boundary suit between appellees and appellant, and to attempt to locate upon the ground the lands claimed by them respectively, so that no conflict would exist between their claims.

Appellant has advanced the following propositions: (a) The court's judgment locating the lines and corners of lots 2 and 3 with reference to the lines and corners of the Murphy survey was without support. (b) The court erred in locating lot 2 as the same should exist upon the ground. (c) The court erred in locating appellant's land immediately adjacent to the Murphy on the east. (d) The court erred in refusing, on motion of appellant, to locate lots 2 and 3 by reference to the patent calls for the Talbot and the plat call for the Cone. (e) The court erred in refusing to find that appellant was in actual possession of the land described in his petition. (f) The court erred in refusing to find that no conflict existed between the land described in appellees' petition and the land described in appellant's cross-action.

(g) The court erred in refusing to construe appellees' petition as tendering the issue of boundary and in refusing to adjudge the issue thus tendered in appellant's favor. (h) Since there was no proof of the location upon the ground of the southwest corner of the Murphy survey, the judgment of the court locating lots 2 and 3 in reference to that corner was wholly insufficient to enable a ministerial officer, such as a sheriff, executing a writ of possession without exercising judicial functions, to locate the land described in said judgment, and therefore, under the decree, the sheriff would not have authority to execute a writ of possession in favor of appellee. (i) The judgment of the court locating the land in controversy by reference to the Murphy survey was without support, since there was no evidence showing, or tending to show, the location upon the ground of the lines and corners of the Murphy survey. (j) There being no evidence to cast suspicion upon the existence upon the ground of the artificial objects called for by appellant in the description of his land, the court erred in refusing to award him lot 3 under the description sued for. (k) Appellant was entitled to the land sued for by him under the theory of prior possession, and the court erred in not so decreeing.

### Opinion.

■ The judgment tying section 3 at its southeast corner to the Murphy at its southwest corner, as the Murphy is located upon the ground, is without support. The patent calls for the Murphy and the plat calls for the Murphy merely indicate that the surveyor for the state, in surveying, and Foster in platting, section 3, thought it adjoined that survey on the east. Such proof was not sufficient to determine a boundary issue, as the court construed this suit to be. Without proof of the actual location upon the ground of the Murphy, and without proof that in fact the Murphy and section 3 had a common line, the court could not so decree. Cochran v. Kapner, 46 Tex. Civ. App. 342, 103 S. W. 472. As locative calls, the Talbot and Cone were of equal dignity with the Murphy. The patent calling for the Talbot, and the plat calling for both the Talbot and the Cone, it was error to refuse to tie section 3 to these two surveys. Meeting this contention, appellees say:

"When the lots were located with reference to the Murphy Survey, about which there is no dispute, so far as the record indicates, that was and is a definite location, and if the lots had also been located with reference to the Talbot or Cone Surveys a conflict may have been created. I don't know whether there would have been or not. The record doesn't show. I don't know whether the Cone and the Talbot Surveys are located on

the ground in some place other than as shown on the Foster Subdivision Map or not. The record doesn't show."

This argument clearly demonstrates the error in the court's judgment. Appellees say they do not know whether the Cone and the Talbot are located "on the ground in some place other than as shown on the Foster Subdivision map or not. The record doesn't show." They do not know, nor did the trial court know upon the evidence offered, the location upon the ground of the Murphy in its relation to section 3. It seems to be the position of appellees that they have *proved* a location adjacent to the Murphy because they pleaded that location. That is not a sound proposition of law. If this were a boundary dispute, the pleading was sufficient to admit proof of the relation of the Murphy to section 3, but pleading without proof was not sufficient to locate section 3 upon the ground. The patent call for the Murphy was of no more dignity than the patent call for the Talbot and the plat calls for the Talbot and Cone. What has just been said disposes of appellant's propositions (a), (b), (c), (d), and (i).

The court did not err in refusing to find that appellant was in actual possession of the land described in his cross-action as asserted by his proposition (e), because he offered no proof identifying his possession; that is, the land held by him under fence with the land described in his cross-action. There being no proof that he was in actual possession of the land so described, there was no basis for his theory of prior possession, as advanced by proposition (k). For an additional reason, this theory is not sound. Appellees established title as a matter of law to lot 2; therefore, had appellant been in actual possession of that lot, such possession would have been of no materiality, except under the pleas of limitation, which he failed in other respects to sustain, even as a fact issue.

Nor did the court err in refusing to find a conflict between the land claimed by appellant and that claimed by appellees, as advanced under proposition (f). On the issue of title, there can be no conflict between lots 2 and 3. As a matter of law, lot 3 lies immediately east of lot 2, and lot 2 lies immediately west of lot 3. It may be that lot 3, properly located upon the ground, occupies the location that appellees claim for lot 2. Or it may be that lot 2 occupies the location claimed by appellant for lot 3. That is a fact issue not raised by the evidence, and, there being no proof of the actual location upon the ground of these lots, the judgment attempting to fix a location for them is without support. What has just been said disposes of proposition (g). Proposition (h) must be sustained.

Since the court was without evidence to locate the southwest corner of the Murphy, and since the judgment fails to tie this corner to any object that an officer executing the writ of possession could identify from the recitals of the judgment, without exercising judicial functions, such officer could not execute the writ. For this reason also the judgment, in so far as it attempts to adjudicate the location upon the ground of these lots, is void. Henderson v. Nelson (Tex. Civ. App.) 284 S. W. 319; Main v. Cartwright (Tex. Civ. App.) 200 S. W. 847; Government Hill Co. v. Mundy (Tex. Civ. App.) 165 S.W. 78. Proposition (j) cannot be sustained.

There being no proof of the location upon the ground of the objects called for by appellant in his description of his land, the court could not judicially locate them upon the ground. The call for such objects, without an actual location, would adjudicate nothing, and would not assist the officer in executing the writ of possession. Had the court attempted to fix these calls upon the ground, he might have caused a conflict with lot 2, and, as we have already said, there can be no conflict between lots 2 and 3 when properly located. The issue is to locate one of them, and from that location the location of the other follows, as a matter of law.

It follows that the judgment of the trial court, in so far as it attempts to fix a location upon the ground for the property in controversy, must be reversed and judgment here rendered to the effect that appellees recover lot 2 and appellants recover lot 3, as they are described and located upon the Foster plat subdividing section 3. All issues as to the location of these lots upon the ground are left open for further adjudication, for the reason that they were raised neither by the pleadings nor the evidence.

The costs of this appeal will be taxed against appellees.

## On Rehearing.

Both parties assign error against our conclusion that the issue of boundary was not raised by the pleadings, and appellees request that, if the judgment in their favor cannot be affirmed in whole, the case be remanded to the lower court for a new trial on the issue of boundary. To this extent the motion for rehearing is granted, and on the issue of boundary alone the case is remanded to the lower court for a new trial. In all other respects both motions for rehearing are overruled.

Appellees say we have errroneously stated their position in the following proposition: "It seems to be the position of appellees that they have *proved* a location adjacent to the Murphy because they plead that location."

In order that the opinion may correctly reflect appellees' argument on this point, we

quote as follows from their motion for rehearing: "That is not at all the position I intended to take. I regret that I did not make my meaning more clear to the court. What I intended to say and what I thought I had said is that having alleged the location of the land sued for in reference to the Murphy Survey I would be *permitted* to prove it, and I also then contended and still contend that I did in fact prove it. I did not then intend to say and do not think I did say that the allegation of the fact constitutes proof of it. It is unfortunate that I did not make my meaning clear. This may have resulted from the fact that when the case was submitted on oral argument it was very late in the day before my turn came and I talked for a very few minutes and made only a few remarks hastily, and although the court very courteously held the session open later in the day than was usual, I did not feel like consuming further time as I thought my brief had sufficiently indicated my contention."