## BOYT v. WEISER.

### No. 5605.

Court of Civil Appeals of Texas.  Amarillo.
April 3, 1944.

Rehearing Denied June 5, 1944.

Llewellyn & Dougharty, of Liberty, for appellant.

E. B. Pickett and Bradford Pickett, both of Liberty, for appellee.

PITTS, Chief Justice.

This suit was filed by appellant, E. W. Boyt, against appellee, R. I. Weiser, which suit in form was trespass to try title but in reality was one of boundary. It involved 16.9 acres of land, alleged by appellant to be a part of H. & T. C. Ry. Co.

Section No. 22, Liberty County, while appellee, owner of land adjacent to Section No. 22, answered by a general denial, plea of not guilty and pleas of limitation. Appellee's pleas of limitation were abandoned and the case was submitted to the jury on one boundary issue.

At the conclusion of the evidence appellant moved for peremptory instruction, which motion was overruled by the trial court and the jury was asked if the land in question was a part of H. & T. C. Ry. Co. Section No. 22, as it was originally located on the ground by the surveyor, A. N. B. Tompkins, to which question the jury gave a negative answer. Appellant moved for a new trial, which motion was overruled by the trial court, and judgment was rendered on June 15, 1940 for appellee except for the awarding of a strip of land, about which there was no question, to appellant. Appellant perfected his appeal to the Court of Civil Appeals of the Ninth Supreme Judicial District at Beaumont and the same was transferred to this court by the Supreme Court of Texas.

Appellant predicates his appeal on two propositions which he briefs jointly and which, in effect, are as follows: There being no conflict or ambiguity in the field notes of the grant in question when applied to the ground and there being no evidence of any marks, natural or artificial which can be identified as having been made by the original surveyor, the location of such lines and corners of the grant as are in dispute is, as a matter of law, controlled by the calls in the field notes of the grant itself and the trial court erred in admitting parol evidence for the purpose of locating such lines and corners as are in dispute in the said grant.

Appellee resists the complaint made by appellant with the claim that uncertainty, doubt and ambiguity exist in the field notes made by the original surveyor in locating the lines and corners of the grant or survey in question; that such were raised by the pleadings; that the trial court properly heard parol evidence on the issue submitted to the jury and that appellant is bound by the finding of the jury and the judgment of the trial court.

The controversy is one of boundary and over the location of the south boundary line of H. & T. C. Ry. Section No. 22, involving a strip of land containing 16.9 acres adjacent to the south line of said survey. Appellant contends that the northeast corner of Section 22 is a recognized and established corner from which the calls and distances in the field notes of the original grant should control, while appellee contends that the original grant does not locate with certainty the northeast corner of Section 22 nor any other corner or lines of the said section but that the northeast corner of the Levi Barrow Survey, an adjoining tract, is a well-established corner from which the calls in the original grant of Section 22 can be determined and located on the ground.

The statement of facts contains 890 pages but the pertinent facts pertaining to the one issue can be briefly stated. The record discloses that by authority of the General Land Office, Section No. 22 was surveyed originally on September 16, 1862 by A. N. B. Tompkins, District Surveyor of Liberty District, for H. & T. C. Ry. Co. as a part of a block survey of 80 sections; that adjoining it on the north is Section 3, on the west is a part of Levi Barrow Survey, on the south is the George Stengler Survey and on the east a part of Section 21 and Section 4; that both parties agree there are no marks, natural or artificial, existing on the grounds called for in the field notes of Tompkins' original survey by which the northwest, southwest or southeast corners of H. & T. C. Co. Survey 22 can be located; that Tompkins began the survey of Section 22 "at a stake on the east boundary line of Survey No. 4 at the S. E. corner of Survey No. 3; thence west at 1630 varas intersected the east boundary line of Levi Barrow's survey." Tompkins finds the west line of the said Section No. 22 to be 2216 varas long, the south line, 1630 varas, and the east line 2216 varas "to the beginning."

On September 9, 1889, J. A. Greene, State Surveyor, made a survey of the same section beginning "at the S. E. Cor. of Sur. No. 3, a stake mkd S. E. No. 3, earth md. & 4 pits on the W. bdy. line of Sur. No. 4, fr. wh. post oak grove brs. S. 17–2/4 deg. W. & N. pt. of timber brs. N. 75–1/2 deg. W. about 1/2 mile" and found the distance from point of beginning along south line of Section 3 to the east boundary line of Barrow Survey to be 1593 varas.

The said land was patented on April 26, 1897, which gave the description of the same as beginning "on the south line of Sur. No. 3 at a stake mkd. S. E. No. 3, an earth md. and 4 pitts on the W. B. Line of Sur. No. 4, from which a P. O. Grove

brs. S. 17–3/4 W. north point of timber brs. N. 75–1/2 W. about 1/2 mile" and shows the distance from point of beginning to the east line of Levi Barrow Survey to be 1593 varas.

Both parties recognized the well-established rule that if there be no uncertainty, doubt or ambiguity in the field notes of the original grant in locating the lines and corners and if one or more of the corners of the original grant can be definitely located on the ground and identified by the objects called for in the field notes of the said grant or survey, the proper method of locating the lines and corners will be by calls and distances from the established corner provided the natural and artificial objects called for in the survey cannot be found or identified by which such lines and additional corners can be established. Numerous authorities are cited in support of said rule. If uncertainty, doubt or ambiguity does exist in the field notes of the original survey and if a place of beginning cannot be definitely established on the ground and identified by the field notes of the original grant and if the natural and artificial objects called for in the original survey cannot be found, we believe the rule is just as well established by the same authorities that parol evidence may be heard by the trial court for the purpose of locating such lines and corners as may be called for in the field notes of the original grant. Gill et al. v. Peterson, 126 Tex. 216, 86 S.W.2d 629; Kirby Lumber Co. v. Adams, 127 Tex. 376, 93 S.W.2d 382; Petty v. Paggi Bros. Oil Co., Tex.Com.App., 254 S.W. 565; Taylor v. Higgins Oil & Fuel Co., Tex.Civ.App., 2 S.W.2d 288; and Thomson v. Langdon, 87 Tex. 254, 28 S.W. 931, all of which cases were cited and discussed by both parties in their briefs. The record discloses and it is conceded by appellant that none of the natural or artificial objects called for in the field notes of the original Tompkins Survey can be found on the ground. The burden of proof was upon him to establish a definite, dependable beginning point. Appellant relies on a "piece of flat iron" marking the northeast corner of Section 22 as his beginning place. There is no evidence showing or tending to show when, by whom nor for what purpose the piece of flat iron was put there. The field notes of Tompkins and Greene made no reference to it and there was no evidence to connect the piece of flat iron with the field notes made by Tompkins or Greene

or the surveys made by them. The Commission of Appeals said in the case of Gill et al. v. Peterson, supra [126 Tex. 216, 86 S.W.2d 631]:

"The mark or object is of no probative value if the field notes or grant contain no description of it or no reference to it and there is no evidence directly connecting it with the work of the original surveyor. But, on the other hand, when it is clearly shown that the mark was made or the object placed by the surveyor at the time he made his survey and for the purpose of marking a line or corner, then the object or mark has probative value."

Tompkins and Greene each began at a stake in the southeast corner of Section No. 3. It is presumed that both of them meant to mark the southeast corner of Section No. 3 as being a corner in common with the northeast corner of Section No. 22, but neither of them so stated and neither of them made any reference to the northeast corner of Section No. 22. The record discloses that the southeast corner of Section No. 3 is 343.5 varas east of the northeast corner of Section No. 22. Tompkins found the distance from his stake (point of beginning) to the east boundary line of the Levi Barrow Survey to be 1630 varas. Greene found the distance from the point of beginning at his stake (the position of both stakes called for the southeast corner of Section No. 3) twenty-seven years later to be 1593 varas from the east boundary line of the Levi Barrow Survey. Witness R. G. Partlow, for eighteen years County Surveyor at Liberty, found in a survey made in 1930 the distance between the piece of flat iron in the northeast corner of Section No. 22 to the east boundary line of Levi Barrow Survey to be 1660 varas.

Partlow saw the piece of flat iron marking the northeast corner of Section 22 for the first time in 1930. Witness H. O. Compton, who had been a surveyor since 1906, testified he had seen the said piece of flat iron first in 1918, since which time it had marked the northeast corner of Section No. 22. We find no evidence supporting the use of the piece of flat iron as a marker for the northeast corner of Section No. 22 prior to 1918. From the time the original survey was made in 1862 to 1918 when witness Compton first saw the piece of flat iron is fifty-eight years, while the court held in the case of State v. Dayton Lumber Co., Tex.Civ.App., 159 S.W. 391,

writ refused, that reputation as to the location of the lines and corners of the original survey forty years subsequent to the original survey was too remote to be admissible.

■ Because of the doubt, uncertainty and ambiguities pointed out above in the field notes of the original survey made by Tompkins, as well as that made by Greene, and because of the uncertainty about the piece of flat iron marking the location of the northeast corner of Section No. 22 as such corner was intended by Tompkins in his original survey, we believe the trial court properly heard parol evidence for the purpose of locating the south line of Section No. 22, which was the line in controversy.

The record discloses that appellee relied on a survey made by witness Partlow, who began at the northeast corner of the Levi Barrow Survey marked by an old plow share and used the same as a controlling call. Witnesses testified that such corner so marked had been a well-recognized and established corner for the past forty to sixty-five years. The northeast corner of the Barrow Survey is some several hundred varas north of the northwest corner of Section 22 and the said corner is not mentioned in the field notes of the Tompkins Survey of Section No. 22. A part of its east line is a line in common with the west line of Section 22 and the field notes of the Tompkins Survey do mention the east line and the southeast corner of the Levi Barrow Survey in defining the lines and corners of Section 22. Partlow made his location of the southeast corner of Levi Barrow Survey from the well-established northeast corner of the same and thus located the lines and corners of Section No. 22 and marked them upon the ground.

■■ Because of the doubt and uncertainty about the location of any of the corners or lines as called for in the Tompkins Survey of Section No. 22, we believe the trial court properly heard parol evidence to establish the line in controversy beginning at a well established and recognized corner of an adjacent survey, namely, Levi Barrow Survey, which survey was mentioned in the field notes of the Tompkins Survey. We believe the jury was justified in finding that appellant had failed to discharge the burden of proof and that the trial court rendered a proper judgment.

Appellant's assignments of error are therefore overruled and the judgment of the trial court is affirmed.