**D. P. BROWN, Appellant,**

v.

**Joe R. EUBANK, Appellee.**

**No. 23.**

Court of Civil Appeals of Texas.

Tyler.

April 23, 1964.

Rehearing Denied May 14, 1964.

Luther Truett, Moses & Truett, McKinney, for appellant.

Roland Boyd, Boyd, Veigel & Gay, McKinney, for appellee.

MOORE, Justice.

This is a boundary suit brought in the form of trespass to try title suit.

Plaintiff, Joe R. Eubank, is the owner of a rectangular strip of land containing approximately 84 acres which runs in a north to south direction. Defendant, D. P. Brown, owns land adjoining a portion of the plaintiff's land on the south and also owns land adjoining plaintiff on the east. Plaintiff and defendant fell into dispute over the location of the plaintiff's south boundary line and the location of the plaintiff's east boundary line. Plaintiff, in his trespass to try title petition, describes the boundaries of his 84-acre tract as follows:

"A part of the Samuel M. Rainer Survey, Patent No. 479, Vol. 4, Abstract No—— described by metes and bounds as follows:

"BEGINNING at a point in the South boundary line of the T F Roberts Survey, which is 505.38 varas east of the southwest corner of said T F Roberts Survey, and from which point a Sapanish Oak 12 inches in diameter, marked 'X' bears north 2 deg. west 72 links;

"THENCE SOUTH on a line parallel with the west boundary line of said samuel M. Rainer Survey, 1335 varas to stake for corner, from which a cluster of bois d'arc marked 'XXX' bears north 13 deg. East 157 links;

"THENCE West 356.5 varas to stake for corner;

"THENCE NORTH on a line paralled with the west boundary line of said Samuel M. Rainer Survey 1335 varas to a stake for corner in the south boundary line of said T F Roberts Survey;

"THENCE East with the south boundary line of said T F Roberts Survey 356.5 varas to the place of beginning, containing 84.3 acres of land, of which 2.16 acres are in the public road * * *."

In addition to the above description describing the four boundary lines of the 84-acre tract, plaintiff further alleges that the south boundary line of his tract had been visibly marked on the ground for more than twenty-five years by a distinct turnrow and by a sufficient number of bois d'arc posts to determine the location of the south line. He alleges that the south and east boundary lines between plaintiff's and defendant's tracts of land are more particularly described as follows, to-wit:

"BEGINNING at a bois d'arc post which marks the northeast corner of the Marvin Moore home place; which Moore land is described in deed from Ethel Moore Montgomery et al to Marvin Moore, recorded in Vol. 467, on Page 152 of the Collin County Deed Records, reference to which is here made;

"THENCE East 803.22 feet to a cedar stake 9about two and one-half feet in length with a diameter of about 1½ to 2 inches0, which said line is located 26 feet and 10 inches south of the two bois d'arc posts which Defendant placed in Plaintiff's field on April 1, 1960;

"Thence due north to the center line of the public road and continuing in a northerly direction with said center line to a point where said center line

intersects the north boundary line of the S. M. Rainer Survey."

Plaintiff plead the three, five, ten, and twenty-five year statute of limitations. Defendant, D. P. Brown, answered with a plea of not guilty and general denial, and affirmatively plead the three, five, ten, and twenty-five year statute of limitations.

The case was tried before a jury. At the conclusion of the evidence the trial court's charge upon which the jury based their verdict is found in paragraph 9 of the charge as follows:

"You are instructed that the 'land in controversy' means:"

"(a)" (Here follows the same description of the 84-acre tract as was set forth in the plaintiff's petition, quoted hereinabove.)

"(b.)" (Here follows the description of the boundary line as alleged by the plaintiff between the two farms on the plaintiff's south and east, as set forth in the plaintiff's petition, quoted above.)

"(c) You are further instructed that if ownership of any part of the above described two tracts be in dispute same shall be deemed 'land in controversy.'"

Although paragraph (c), quoted above, refers to two tracts of land, there is only one tract of land involved, the second description in the charge under paragraph (b) being another and different description of the boundary between the two farms where plaintiff alleges they join on his south and east.

In response to numerous special issues pertinent to this appeal, the jury found for the plaintiff on the three, five, ten, and twenty-five year statute of limitations on the "land in controversy." The jury found against the defendant on each of his limitation issues.

In addition to those issues, the court also submitted the question of boundary in Spe-

cial Issue No. 4, which was answered in favor of the plaintiff as follows:

"Do you find from a preponderance of the evidence that a boundary line beginning at a bois d'arc post which marks the northeas___ corner of the Marvin Moore homeplace; which Moore land is described in deed from Ethel Moore Montgomery et al to Marvin Moore, recorded in Vol. 467, on page 152 of the Collin County Deed Records, reference to which is here made;

"Thence East 803.22 feet to a cedar stake (about two and one-half feet in length with a diameter of about 1½ to 2 inches) which said line is located 26 feet and 10 inches south of the two bois d'arc posts which defendant placed in plaintiff's field on April 1, 1960; Thence due north to the center line of the public road and continuing in a northerly direction with said center line to a point where said center line intersects the north boundary line of the S. M. Rainer Survey, Abstract No. 740, situated in Collin County, Texas, is the true boundary line on the ground between the Joe R. Eubank land and the D. P. Brown land?

"Answer 'Yes' or 'No'.

"ANSWER: Yes."

Upon the verdict of the jury, the court granted judgment for the plaintiff, from which this appeal is prosecuted. In his judgment the court granted plaintiff the title and possession of the premises described and bounded as follows:

"Situated in Collin County, Texas, a part of the Samuel M. Rainer Survey, Patent No. 479, Vol. 14 Abstract No. 740 described by metes and bounds as follows:

"BEGINNING at a point in the South boundary line of the T. F. Roberts Survey, which is 148.68 vrs. east of the southwest corner of said T. F. Roberts Survey;

"THENCE South on a line parallel with the west boundary line of the said Samuel M. Rainer Survey 1335 vrs to point in north boundary line of the Marvin Moore Homeplace;

"THENCE East with the North Boundary line of the Marvin Moore Homeplace to a bois d'arc post which marks the northeast corner of said Moore farm; which Moore land is described in deed from Ethel Moore Montgomery, et al, to Marvin Moore, recorded in Vol. 467, Page 153 of the Collin County Deed Records, reference to which is here made;

"THENCE continuing on east for a distance of 803.22 feet to a point;

"THENCE due north to the center line of the public road and continuing in a northerly direction with said center line to a point where said center line intersects the north boundary line of the S. M. Rainer Survey, which said line is in common with the south boundary line of the T. F. Roberts Survey;

"THENCE West 356.5 vrs. to place of beginning, containing 84.3 acres of land, of which 2.16 acres are in the public road * * *."

The evidence shows the land involved to be agricultural land, without a fence between the two farms. Each of the farms are in cultivation with no trees or other natural objects upon the ground, but with only a "turn row" separating them.

Appellant, defendant below, among other points seeks a reversal of the judgment because the evidence fails to support the verdict and judgment locating with certainty the land upon the ground.

■ It being stipulated that the plaintiff and defendant owned adjacent lands which at the point of this boundary line dispute they both owned their respective land in fee simple, from the sovereignty of the soil, we believe such a stipulation leaves only the question of the location of the true boundary line to be decided.

■■ Although plaintiff did not plead that his land was adjacent to defendant's land, we believe that in view of this type of stipulation the burden of proof in this instance would rest upon the plaintiff in order to show himself entitled to the relief which he sought in this cause, to prove by competent evidence that the south boundary line of his property was also the north boundary line of the Brown property and that the east boundary line of his property was the west boundary line of the Brown property. Hancock v. Bennett, Tex.Civ. App., 230 S.W.2d 328. At any rate, plaintiff had the burden of locating the true boundary line on the ground between the two tracts, as specifically pleaded by him.

In an effort to prove the lines between the two farms, plaintiff employed Louis Miller, a licensed land surveyor, to establish the lines. Not being able to locate any of the plaintiff's alleged boundary lines to the 84-acre tract because he could not find a beginning place, Miller testified that in order to establish the locations of the plaintiff's south boundary line and the defendant's north boundary line, he went upon defendant's tract of land, lying to the south of plaintiff, for the purpose of establishing the defendant's north line. He testified that he commenced his survey at the intersection of the defendant Brown's west boundary line and a railroad track which ran across the defendant's property; that he proceeded north up the defendant's west property line, which line also was Marvin Moore's east line, for a distance of 2,478.30 feet, as called for in defendant's deed, at which distance he established a point for Brown's northwest corner from which the north boundary line of the Brown property would then run east. He testified that this point was 24.3 feet south of a bois d'arc post which plaintiff plead was the Marvin Moore northeast corner, and from which plaintiff contended that the line then runs east a distance of 803.22 feet, as alleged in

his petition. According to Mr. Miller, the Marvin Moore northeast corner was not discernible on the ground, and as we understand his testimony, even though there was a bois d'arc post in the vicinity which was pointed out to him as being Moore's northeast corner, he does not locate the beginning point of the boundary line there where the plaintiff alleges same to be, but on the contrary locates it 24.3 feet south of said post. According to his testimony, he did not commence his survey of the boundary line at the bois d'arc post, but commences it at which he considered the Brown northwest corner which was 24.3 feet south of the post. From there, following the calls in the Brown deed, he says he went east a distance of 803.22 feet where he established a "point," thus establishing the plaintiff's south boundary line and the defendant's north boundary line along this line. Nowhere in his testimony do we find where he established and marked Moore's northeast corner east at 26 feet and 10 inches south of two bois d'arc posts, which defendant placed in plaintiff's field on April 1, 1960, to a cedar stake, as alleged in the plaintiff's petition. Nor do we find from his testimony that he marked the corner in any way, other than establishing a point. It appears from his testimony that his survey of the boundary line stopped at this point. We have not been able to find from his testimony where he connects this point with any line running north, although we do find several maps or plats which he testified he prepared, which shows that from this point there is a straight line running north, dividing Eubank's and Brown's north 75-acre tract. The course of this line is not shown on the plat; however, he testified he did not know whether the line was a true north-south line or not. None of his maps or plats show a road running along this line; however, he testified that he observed the road running north in the vicinity of the line. He further testified that the south end of the road appeared to veer farther east toward the Brown farm than north end and that the south end of the road made a round-

ing 90 degree turn to the east somewhere near the southwest corner of Brown's 75-acre tract. Nowhere in his testimony does he attempt to connect the line he established as Brown's north line with the road. Although the petition alleges, and the judgment recites, in the second call that a line running "due north" would intersect the center line of the road, we have been unable to find any testimony showing where or at what point such a line would converge with the center line of said road. As we understand Mr. Miller's testimony, he did not run this line, nor can we find in his testimony where he testified that the line would converge with the center line of the road. Furthermore, he testified that he could not say that the road in question ran in a true north-south direction. His testimony, together with other testimony, showing that the traveled portion of the north and south section of the road had been moved eastwardly at the south end thereof in the direction of the Brown property, further complicates the question of where the line running north would intersect the center line thereof, if indeed it ever would.

Plaintiff, Joe Eubank, testified that the controversy over the south line of his farm originally commenced in about 1957, when defendant Brown accused him of taking some of his land. He testified that he continued to cultivate the land in controversy on his south side down to the "turn row" which he had done for several years before; that on April 1, 1960, defendant Brown crossed over the "turn row" and placed two stakes about 27 feet north of the "turn row" in his field and commenced cultivating the strip of land; also commencing to cultivate a narrow strip of land on his east side between Eubank and the roadway; that he, Eubank, then went upon the ground and marked off the line that he claimed to be the true boundary line between the two farms on his south and east. He testified that he was present when Marvin Moore set the bois d'arc post at the point which he claimed to be his northwest corner; that at the time the post was set, there was a

stake there and the post was set where the stake was; that the post was still there at the time of the trial; that from this post he went due east a distance of 803.22 feet, which distance he found to be in Brown's deed; that such a line was along the "turn row" which had been in use for years; that he marked this point by driving in the ground a little cedar stake about an inch and a half in diameter and about two feet long; that at this point the line goes north to the center of a public road and then on north to the north boundary line of the Rainer Survey; that at a point on the south line about 30-40 feet west of the corner stake he drove another stake in the ground. He testified that this is the line he claims to be the true line and that he does not claim down as far south as the place where his surveyor places Brown's north line.

Marvin Moore testified that in 1957 or 1958 he had a survey made of his farm for the purpose of obtaining a loan. He testified that when the survey was made, he himself, pointed out the corners of his farm and showed them where to begin and that the surveyor surveyed from the corners he pointed out. The evidence shows that Moore's deed did not contain any calls for distance, nor was there a call for a bois d'arc post at this northeast corner. The evidence fails to connect any of the corners of his land with the land in controversy.

Plaintiff introduced other testimony, but since same is mostly cumulative of that hereinabove set forth, it will not be summarized.

Defendant, D. P. Brown, testified that on April 1st he went upon the land north of the "turn row" which had been in use for years and at a point about 30 feet north of the bois d'arc post Moore claimed to be his corner, he put down another bois d'arc post upon the land that Eubank had been cultivating; he then went east and set another post in the land Eubank had in cultivation about 30 feet north of post Eubank had been using to maintain an electric fence; that he then commenced to cultivate this strip of land on the south and that since the road on Eubank's east side had been gradually moved over on his north 75-acre tract through the years, he commenced to cultivate a small strip to the west of the road, thus taking in a strip of about 30 feet on the south and a strip about 17½ feet wide by approximately 540 feet long on the east of the land Eubank had been cultivating, claiming same to be the boundary line. Brown did not call a surveyor in his behalf.

After having considered the evidence outlined above, as well as the other evidence in the record, we have concluded that the evidence does not sustain the verdict and judgment.

■■ The burden of proof was upon the plaintiff to establish a definite, dependable beginning point upon the boundary line, as alleged by him. The beginning point alleged to be at Moore's northeast corner was never established upon the ground. The surveyor testified that it could not be located upon the ground. There were no field notes in Moore's deed by which it could be located without a survey of the lines. Moore's testimony to the effect that a surveyor had established the northeast corner at a place where he pointed out his corner to be, would not establish the corner on the ground, especially in the absence of the introduction of any field notes made by the surveyor at the time. Boyt v. Weiser, Tex. Civ.App., 180 S.W.2d 953.

■■ Since the court and jury was without evidence locating Moore's northeast corner, and since the judgment fails to tie this corner to any object that an officer executing the writ of possession could identify, without exercising judicial functions, such officer could not in our opinion execute the writ. Cunningham v. Settegast, Tex.Civ. App., 24 S.W.2d 520, 523; Carter v. Webb, Tex.Civ.App., 239 S.W. 630. In other words, the beginning point and corners should be established and marked in such way that there can be no controversy. Here, the true beginning point was a contro-

verted issue of fact. The issue was not submitted to the jury, but was assumed by the court to begin at Moore's northeast corner. For this reason, it is our opinion that the judgment adjudicating the location of the line is void because the beginning point has never been properly established. Henderson v. Nelson, Tex.Civ.App., 284 S.W. 318; Main v. Cartwright, Tex.Civ. App., 200 S.W. 847.

Even though it be assumed that the beginning point has been properly established, according to the evidence the plaintiff was the only person who made a survey of the south line from the beginning point. Plaintiff was not a surveyor. He testified, however, that he began at Moore's northeast corner and went east 803.22 feet, at which point he drove a stake. There is no testimony showing that this corner was ever marked and laid out on the ground in any other way. From this point he testified that he ran a line "due north" to the road. The point at which the line intersects the road was not marked and therefore we have no way of knowing where this point would be. As pointed out before, his surveyor, Louis Miller, did not survey this line as the boundary line but surveyed the north line of the Brown farm as the boundary line.

In a boundary case the lines must be established and definitely marked upon the ground. The test of the sufficiency is whether the identification of the line upon the ground so identifies the land that an officer charged with the duty of executing a writ of possession could go upon the ground and without exercising judicial function, ascertain the locality of the line. Based upon the testimony in this record, we believe that the line so established failed to meet this test. Whitmore v. McNally, Tex.Civ.App., 39 S.W.2d 633, 635.

There being no proof of the location upon the ground of any of the corners, the court could not judicially locate them upon the ground and did not attempt to do so, but merely attempted to follow the pleadings and the verdict. Mere calls for objects without actual location adjudicates nothing and would not assist the officer in executing a writ of possession. It is a fundamental rule in boundary cases that the verdict and judgment should definitely fix and establish the location of the line in dispute, and ordinarily should do so with reference to some known object concerning the identity and location of which there is no controversy. Of course, the judgment must be based upon the pleadings, verdict and the evidence. We think the evidence in the record before us fails to establish the boundary line where the plaintiff claimed it to be upon the ground. Ball v. McDuffie, Tex.Civ.App., 212 S.W. 844; Cunningham v. Settegast, supra; Hernandez v. Robledo, Tex.Civ.App., 236 S.W.2d 242.

Neither do we believe that it can be successfully contended that the judgment can be sustained upon findings in favor of the plaintiff upon his plea of limitations, because if the evidence is insufficient to support the findings locating the south and east boundary on the ground, the evidence would also be insufficient in trespass to try title. The plaintiff having pled what he felt to be a more accurate description of the south and east boundary line than that contained in his deed, had the burden of establishing those lines upon the ground by legal and competent evidence. This we think he failed to do. In this connection, his surveyor, Louis Miller, testified as follows:

"Q Mr. Miller, instead of going that circuitous route from the railroad and following fence lines and deed references to determine the boundary of the Brown property, why didn't you just determine the boundary of the Eubank property?

"A We made an extensive effort to do that.

"Q You were unable to do that?

"A We were unable to find a beginning place."

The record leaves no doubt that plaintiff did not claim or attempt to establish a boundary between the two farms by following the footsteps of the original surveyor. The boundary line claimed and sought to be established by the plaintiff was the line which he sought to establish in trespass to try title based upon his plea of limitations. The issue of location on the ground is an issue of title in such cases. Withers v. Republic National Bank of Dallas, Tex.Civ.App., 248 S.W.2d 271; Johnson v. Johnson, Tex.Civ.App., 275 S.W.2d 146.

Appellant has other assignments of error in his brief, but since those discussed will require reversal, we will refrain from discussing others.

For the reasons above stated, the judgment is reversed and the cause remanded.