In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-00-00153-CV


______________________________




WILLIAM M. AMERMAN AND


CAROLYN FRANCES AMERMAN, Appellants


V.



KIRK E. MARTIN AND SUZANNE K. MARTIN, Appellees




 


On Appeal from the 136th Judicial District Court


Jefferson County, Texas


Trial Court No. D-159-122




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Justice Grant



O P I N I O N



 William Amerman and Carolyn Amerman appeal from a judgment in favor of Kirk Martin
and Suzanne Martin in which the trial court, after a jury trial, declared a boundary line dispute in
favor of the Martins and awarded attorney's fees to the Martins. The Martins were the plaintiffs in
the action below.

 The Amermans contend that this relief could not have been proper because the Martins
abandoned their trespass to try title claim before resting, that the evidence was factually and legally
insufficient to support the jury's verdict, that there was factually and legally insufficient evidence to
support the jury's finding that the Amermans had caused a cloud on the Martins' title, and that
attorney's fees were improperly awarded.

 The Martins built a wire fence on a line they contend was the correct boundary line between
their tract of land and the Amermans' adjoining tract of land. William Amerman tore down the
fence, contending it encroached thirty feet into the Amerman property. The Martins filed a trespass
to try title lawsuit, a request for declaratory judgment with injunctive relief, and an action to quiet
title. Three questions were submitted to the jury: (1) the jury was asked to find by a preponderance
of the evidence whether the boundary line drawn by the Martins' surveyor was the proper location
of the boundary line on the ground; (2) the jury was asked whether the Amermans' survey, which was
filed of record, cast a cloud on the Martins' title; and (3) the jury was asked for the amount of
attorney's fees that should be awarded to the Martins. 

 The court did not submit an issue on trespass to try title to the jury. At a conference before
the submission to the jury, both parties agreed the thirty-foot strip of property would be awarded in
accordance with the jury's finding on the correct location of the boundary line on the ground. (1)

 The jury found that the Martins' surveyor's line was correct, that the Amermans' survey cast
a cloud on the Martins' title, and found the attorney's fees to be in the amount of $25,000, plus
$10,000 in attorney's fees for appeal to this court.

 The first matter that must be resolved is the type of action brought in this proceeding. The
Amermans contend this suit is in the nature of a trespass to try title action because it is determining
title to the land. See Tex. Prop. Code Ann. § 22.001 (Vernon 2000).

 In a trespass to try title action, the plaintiff must prove a regular chain of conveyances from
the sovereignty, prove superior title out of common source, prove title by limitations, or prove prior
possession which has not been abandoned. Rogers v. Ricane Enters., Inc., 884 S.W.2d 763 (Tex.
1994).

 In Plumb v. Stuessy, 617 S.W.2d 667 (Tex. 1981), the Texas Supreme Court determined that
boundary disputes may be tried by a statutory action of trespass to try title; however, it is not a pure
trespass to try title action; rather, it is a boundary suit even though it may involve questions of title. 
In this type of suit, it is not necessary for the plaintiff to establish a superior title to the property in
the manner required by the formal trespass to try title action. See also Rocha v. Campos, 574 S.W.2d
233, 235 (Tex. Civ. App.-Corpus Christi 1978, no writ); Brown v. Eubank, 378 S.W.2d 707, 711
(Tex. Civ. App.-Tyler 1964, writ ref'd n.r.e.). 

 This court has held that the placing into evidence of a recorded deed showing a plaintiff's
interest in the disputed property has been held sufficient to establish a present legal right of
possession in a boundary suit. Lee v. Grupe, 223 S.W.2d 548, 550-51 (Tex. Civ. App.-Texarkana
1949, no writ). It is not necessary to dwell on the possible variations of trespass to try title actions
in the present case because the Martins and the Amermans agreed that ownership of the land would
be determined by the first issue, which was a question of boundary only. Thus, the issue submitted
to the jury related to the boundary of the property between the two tracts of land. 

 Furthermore, in the present case, the parties agreed the two tracts of land should abut each
other (not overlap) in accordance with these separate tracts of land purchased by the two parties. The
dispute was where these lines were located on the ground. Thus, it was not necessary for either party
to establish a chain of title, but the sole issue at trial concerning the ownership of the thirty-foot strip
of land was a matter to be determined by where the survey line was located on the ground. This is
not to say there were not references to prior conveyances and surrounding tracts of land in order to
properly locate the boundary on the ground. The points complaining of the Martins' failure to
establish a chain of title showing ownership back to the sovereignty of the soil or to a common
source are therefore overruled. 

 The Amermans also contend the evidence was legally and factually insufficient to support
the jury's determination that the boundary line as set out by the Martins' surveyor was the correct one. 
 When deciding a no-evidence point, in determining whether there is no evidence of probative
force to support a jury's finding, we must consider all of the evidence in the record in the light most
favorable to the party in whose favor the verdict has been rendered, and we must apply every
reasonable inference that could be made from the evidence in that party's favor. Merrell Dow
Pharm., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997). In this review, we disregard all evidence
and inferences to the contrary. Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995);
Best v. Ryan Auto Group, Inc., 786 S.W.2d 670, 671 (Tex. 1990). A no-evidence point will be
sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by
rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c)
the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence
conclusively establishes the opposite of the vital fact. Uniroyal Goodrich Tire Co. v. Martinez, 977
S.W.2d 328, 334 (Tex. 1998).

 When considering a factual sufficiency challenge to a jury's verdict, courts of appeals must
consider and weigh all of the evidence, not just that evidence which supports the verdict. Maritime
Overseas Corp. v. Ellis, 971 S.W.2d 402, 407 (Tex. 1998). A court of appeals may set aside the
verdict only if it is so contrary to the overwhelming weight of the evidence that the verdict is clearly
wrong and unjust. Id.; Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). The court of appeals is not
a fact-finder. Accordingly, the court of appeals may not pass on the witnesses' credibility or
substitute its judgment for that of the jury, even if the evidence would clearly support a different
result. Maritime, 971 S.W.2d at 407.

 The discrepancy between the testimony of the opposing surveyors focuses on the setting of
the northwest corner of the Crowell/Martin property, being the northwest corner of the
Devoss/Amerman property. Mark Whiteley, the surveyor for the Martins, set that corner at a
one-and-one-half-inch pipe found at the corner location. He cited documentary evidence of other
surveyors who had acknowledged and used that one-and-one-half-inch pipe in previous surveys. (2)
 
There is a general rule in surveying of endeavoring to find the footsteps of the original surveyor and
to try to harmonize the survey with previous field-note calls. See 4 Fred A. Lange & Aloysius A.
Leopold, Texas Practice: Land Titles and Title Examination § 815 (1992), and cases cited
therein.

 On the other hand, Gilbert Johnston, the surveyor for the Amermans, placed the corner in
question at a five-eighth-inch rod. He cited no prior surveys that had mentioned, acknowledged, or
used this rod in any way on any of the boundary lines for a starting point, and furthermore, Whiteley
testified the five-eighth-inch rod was not in the ground when he surveyed the property three years
earlier. This left the jury to decide whether this rod had been a part of any previous surveys or
markings establishing the boundary line.

 Both the law and the principle of surveys establish a priority of calls. Ordinarily, laws will
give a priority in the order (1) of calls for natural objects, (2) of calls for artificial objects, (3) of calls
for course and distance, and (4) of calls for quantity or acreage. This principle has been approved
by numerous cases in Texas as far back as Stafford v. King, 30 Tex. 257 (1867). Johnston relied
heavily on distances in his locating of the boundary line in question. However, as set forth above,
artificial objects such as stakes or pipes have priority over the distance. 

 In considering the factual sufficiency of the evidence, we have considered the testimony of
the Amermans' surveyor, as well as the document conveying an easement from the Amermans'
immediate predecessor from Pye to the Jefferson County Drainage District Number 6. The emphasis
in that conveyance was the distance of the width, not the corner markers.

 The testimony in this case, as well as the exhibits of previous deeds and surveys, were legally
and factually sufficient to support the jury's finding of the location of the boundary line in question.

 The Amermans next contend the Martins failed to prove the Johnston survey cast a cloud on
the title to their property. The answer to jury question number one made that factual determination
and, based on that finding, the court made a judicial determination as to the location of the line. The
Johnston survey had been filed of record, and the determination that it placed a cloud on the title
naturally flowed from the jury's finding as previously discussed. These contentions are overruled.

 The remaining question is whether the Martins are entitled to recover attorney's fees. This
court found in a suit to quiet title or to remove a cloud on title that attorney's fees were not available. 
Sadler v. Duvall, 815 S.W.2d 285, 293-94 (Tex. App.-Texarkana 1991, writ denied). Accord
Southwest Guar. Trust Co. v. Hardy Road 13.4 Joint Venture, 981 S.W.2d 951, 957-58 (Tex.
App.-Houston [1st Dist.] 1998, pet. denied). 

 In the present case, the artful pleading of the plaintiffs requested that this decision be made
under the Uniform Declaratory Judgments Act, Section 37.001, et seq., which provides that the trial
court may award attorney's fees. Tex. Civ. Prac. & Rem. Code Ann. § 37.001, et seq. (Vernon
1997 & Supp. 2002). It is an abuse of discretion for the trial court to award attorney's fees under the
Uniform Declaratory Judgments Act when the statute is relied on solely as a vehicle to recover
attorney's fees. Tex. State Bd. of Plumbing Exam'rs v. Associated Plumbing-Heating-Cooling
Contractors of Tex., Inc., 31 S.W.3d 750 (Tex. App.-Austin 2000, pet. dism'd by agr.)

 In Brainard v. State, 12 S.W.3d 6, 27-30 (Tex. 1999), the Texas Supreme Court discusses
this matter. The Texas Supreme Court disallowed attorney's fees in Brainard, because the wording
of the resolution authorizing the suit against the state did not authorize the suit to be brought under
the Uniform Declaratory Judgments Act. However, in dicta, the Texas Supreme Court suggests that
such a boundary line dispute could be brought under the Uniform Declaratory Judgments Act. 

 Until the Texas Supreme Court rules in the ratio decidendi of an opinion that attorney's fees
are appropriate in this type of action, we shall not allow this expansion of the rule. In Ely v. Briley,
959 S.W.2d 723 (Tex. App.-Austin 1998, no pet.), the court held that attorney's fees under the Texas
version of the Uniform Declaratory Judgments Act are not appropriate in a suit that is in the nature
of a trespass to try title. The present suit, being a boundary dispute with title to a strip of land in
question, is in the nature of a trespass to try title suit. Therefore, this point of error is sustained and
attorney's fees are denied.

 The judgment of the trial court is modified to delete the award of attorney's fees. As
modified, the judgment is affirmed.



 Ben Z. Grant

 Justice


Date Submitted: August 30, 2001

Date Decided: May 16, 2002


Publish

 

1. In a discussion before the final arguments to the jury, the trial court stated: "The parties
having agreed that that [the trespass to try title] would be handled by the Court depending on the
resolution of the boundary dispute, . . . ."


 The trial court further stated in the conference, "the Amermans have title based on Plaintiff's
indication that they will stipulate on the record that if the jury finds in answer to Question 1 that the
correct line is as shown in the survey prepared by Mr. Whiteley, that if it's answered unfavorably to
them at the conclusion of the last appeal, if any, they will execute waiver papers necessary to
formally deed the property over to Defendant."
2. Whiteley testified that in the surveys he had reviewed, Guy Stonecipher established that
corner in 1964, Matt M. Racki the same location in 1973, Billy J. Howell in 1983, and in his own
surveys in 1987, 1991, 1992, and 1993. 



which had created problems obtaining M.A.'s medication. M.A. was not on his
medication when he committed the criminal mischief. M.A.'s parents attributed M.A.'s most
recent behavior to the lack of medication. In addition, Gray testified he assumed M.A. was
not on his medication when he misbehaved. However, M.A.'s mother admitted M.A. was
taking his medication when he committed the previously adjudicated misdemeanors. 
Forehand testified he did not believe M.A.'s behavior was any different when he was on
his medication. 
          There was no evidence introduced at the hearing that Harrison County has
alternative facilities which would meet M.A.'s needs.


 M.A. argues on appeal that the trial
court should have attempted to see how M.A. would behave in the Harrison County
Juvenile Services' Long Term Program. The record does not indicate what services are
available in the Harrison County Long-Term Services' Program, but the record does
indicate the trial court was aware of the program. According to Forehand, the rehabilitative
and counseling services at T.Y.C. are considerably more extensive than those available
at Willoughby Juvenile Center. Forehand testified M.A.'s behavior in detention indicates
that placement of M.A. in the long-term program would be very disrupting to the other
resident members of the long-term program. M.A. had already attended boot camp ("the
STAR program") and had exhausted other services available locally. Forehand testified
there were not any additional services available locally to attempt to rehabilitate M.A. We
cannot say the trial court abused its discretion in determining Harrison County lacked the
services M.A. needs.
Conclusion
          We are unable to conclude the trial court acted arbitrarily or without reference to
guiding principles. The trial court was presented with evidence that M.A. had previously
been adjudicated of committing three misdemeanors, including resisting arrest; had
exhibited acts of violence towards other residents at the detention center as well as the
staff of the detention center; and had exhausted all services available locally. The trial
court did not abuse its discretion in committing M.A. to T.Y.C. 
          Accordingly, we affirm the modification and disposition orders of the trial court.




                                                                Donald R. Ross
                                                                Justice
 
Date Submitted:      April 17, 2006
Date Decided:         July 19, 2006