gagee, Cooney. Either party could at any time, by petition or motion, prefer his claim to it, whereupon it would become the court's duty, after causing proper notice to be given to whomsoever it might deem proper, to pass upon such petition or motion. The dismissal of it would not necessarily establish the title of any contesting party. The court might well adjudge that the petitioner, A, had failed to establish his right, and dismiss his petition, retaining custody of the fund until some other petitioner, maybe a second, maybe a fiftieth, should establish his right satisfactorily to the court.

Accordingly, I must hold that, by this agreement, sanctioned as it was by an order of the court, the parties submitted their matters in dispute to the decision of the court, upon petition to be filed, waiving their respective rights to institute proceedings in equity or at law, either in the district or the circuit court. Such, obviously, was the intent of the parties. At the date of that agreement, the rulings of Justice Swayne (Bill v. Beckwith [Case No. 1,406]), were recognized as authoritative by the bar in this district, and redress or relief in nearly all cases arising under the bankrupt law was sought by petition, that being, evidently, as held by that learned judge, "a cheaper, speedier, and more simple mode" than proceedings at law or in equity, according to established usages and existing laws. And in harmony with this hypothesis has been the conduct of the parties. Within a week after the deposit of the money, and the appointment of an assignee, the mortgagee, Cooney, files his petition to the court, and on the 3d of February, 1869, the creditors, without objection to the form of proceedings, ask delay of trial, that they may procure the evidence of one of the petitioning creditors; and thereafter, until the 2d of November, 1870, nearly two years, they permit the case to stand upon a docket, which was actually or constructively called for trial on the first Wednesday of every month, without motion to the court, or suggestion of error of process, or of misapprehension of rights, to the petitioner. These are not insignificant facts, regarded as bearing upon the intent of the parties to the agreement of June 27, 1868; nor is it an insignificant fact, that at this late day it may be questioned if either the assignee or petitioner can bring any action or suit. The bankrupt law (second section) expressly bars all actions or suits by or against any assignee, unless brought within two years from the time the cause of action accrued.

The motion or petition of the creditors, Sheldon, Kelly & Hale, that the petition of Cooney, mortgagee, be dismissed for want of jurisdiction, is overruled or denied, and the petition last named must stand for hearing upon its merits. When the assignee of the bankrupt, Masterson, shall see fit to file his petition that the money in the registry be paid over to him, it will become the court's duty to pass upon his claims, as against Cooney, as well as all other contestants. A petition to a court to order a distribution of a fund lodged in its registry, I do not, as at present advised, regard as an action or suit within the meaning of the clause above quoted from the 2d section of the bankrupt law.

---

### Case No. 9,269.

#### MASTERSON v. KIDWELL.

[2 Cranch, C. C. 669.] [1]

Circuit Court, District of Columbia. May Term, 1826.

ARBITRATION AND AWARD—NOTICE TO PARTIES—REVOCATION—MOTION TO SET ASIDE—WHEN MADE.

1. Upon the submission of a cause to arbitration by consent of parties and rule of court, the arbitrators are not bound to give notice to the parties of the time and place of making their award.

2. After submitting a cause to arbitration by rule of court, neither party can revoke his submission without consent of the other.

3. Notice of the filing of the award may be given to the attorney-at-law of the opposite party.

4. Want of notice is no ground of exception, but of a motion to set aside the award.

5. Quaere, whether a motion to set aside an award must not be made within four days after notice of the filing of the award.

This cause was, by consent of the parties and a rule of court submitted to arbitrators, who made their award, which was filed, and notice of the filing was given to Mr. Swann, the attorney-at-law of the defendant, who filed exceptions to the award: (1) Because the arbitrators made the award at a time and place of which the defendant had no notice. (2) That before the award the defendant had revoked his submission. (3) That notice of the award was served only upon the defendant's attorney-at-law.

1st. The parties must have notice of every meeting of the arbitrators. Rigden v. Martin, 6 Har. & J. 406; Kyd, Awards, 29, 31, 34, 96. No time was given to the defendant to produce his evidence. 2d. Before the award was made, viz. on the 15th of December, the defendant revoked his submission and gave notice thereof to the arbitrators; notwithstanding which, without any notice to the defendant of their intention to proceed, they made an award on the 20th. Kyd, Awards, 112, 113. The submission is only an authority, not a contract. If the submission be by bond, it may be revoked, and the arbitrators cannot proceed; but the party revoking will be liable upon his bond. If the submission be by rule of court, and he revokes, he may be attached, but the arbitrators have no authority to make an award. Kyd, Awards, 29, 33.

Mr. Marbury, contra. The want of notice is not the ground of exception, although it may

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

be of a motion to set aside the award; but then it must be supported by affidavit. Exceptions must be for matter apparent on the face of the award. But à motion to set aside the award is now too late. It should be made within four days after notice of the award. Rigden v. Martin, 6 Har. & J. 403; Kyd, Awards, 29, 34; Oxley v. Oldden, 1 Dall. [1 U. S.] 430. Neither party has a right to revoke a submission made under a rule of court. It would be a contempt of the court. Under the act of assembly of Maryland (1785) c. 80, § 11, notice to the attorney-at-law is sufficient. The parties are not entitled to notice of the time and place of making up their award.

Mr. Swann, produced the defendant's affidavit stating the facts, which he considered as evidence of malpractice of the arbitrators, and moved to amend his exceptions by stating their improper conduct.

But THE COURT overruled all the exceptions and ordered the judgment to be entered upon the award. CRANCH, Circuit Judge, wishing for time to look at, and consider the papers, gave no opinion.

[The defendant filed a bill in equity to stay the judgment at law. A preliminary injunction was granted. Upon final hearing the court decided that the bill lacked equity, in that the complainant had a complete and adequate remedy at law. Injunction dissolved. Case No. 7,758.]

MASTERSON (KIDWELL v.). See Case No. 7,758.

MASTICK (MORGAN v.). See Case No. 9,803.

M A S T I N  B A N K (ROSENTHAL v.). See Case No. 12,063.

## Case No. 9,270.

MASURY v. ANDERSON et al.

[11 Blatchf. 162; 6 Fish. Pat. Cas. 457; 4 O. G. 55; Merw. Pat. Inv. 114.][1]

Circuit Court, S. D. New York.    May 8, 1873.

PATENTS—PAINT CAN — INFRINGEMENT — EQUIVALENT—CLAIM OF PATENT.

1. The letters patent granted to John W. Masury, July 12th, 1859, for "an improvement in paint cans, &c.," the claim of which is, "the construction of a metallic can for hermetically sealing paints and other substances, having attached thereto a rim or ring of thin brass or other soft metal, in such a manner that the top or cover may be removed by severing the said rim or ring of brass or other soft metal with a penknife or other sharp instrument, in the manner and for the purposes herein described and represented, or its equivalent," are valid.

2. The invention covered by such claim consists in placing in one end of a can, and adjacent to the edge of the wall or side of the can, a rim or ring of thin brass or other soft metal, thus forming part of the end of the can, and designed to be cut through, to open the can, and is not anticipated by a can of tin with a band of sheet lead in the outer wall or side of the can,

and encircling the circumference of the can, with each of its two edges soldered to the adjacent tin.

3. It is an infringement of such claim to make a can with one end wholly of thin tin, which can be easily cut at the outer edge of such end.

4. The rights of a patentee depend on the claim of his patent, properly construed, and not on what he may erroneously suppose it covers.

[Cited in McClain v. Ortmayer, 141 U. S. 419, 12 Sup. Ct. 78.]

[This was a bill in equity by John W. Masury against William Anderson and Frederick O. Pierce, brought upon letters patent No. 24,748, granted to complainant.]

W. Howard Wait, for plaintiff.
George Harding, for defendants.

BLATCHFORD, District Judge. This suit is founded upon the same letters patent upon which the suit of the same plaintiff against Daniel F. Tiemann and others was brought [Case No. 9,271]. The opinion in that case describes the invention, and sets out the specification and claim. It also states at length the value and use of the patented can.

In this suit, the infringement charged in the bill is the same as in that suit, namely, "that the defendants have made, and caused to be made, for their use, cans embodying the patented invention, and have vended paints and colors put up in cans so constructed." The defendants are shown to have sold cans containing paints made liquid with oil, put up by them in such cans.

The answer in this suit sets up the defence of want of novelty in the invention, as did the answer in the former suit, but adduces, to support such defence, matters not set up in that suit. It avers, among other things, that the plaintiff's invention is described in letters patent No. 11,892, granted in England to Jules Jean Baptiste Martin de Lignac, and dated October 7th, 1847. In the specification of the Lignac patent, which was enrolled April 3d, 1848, the following language is all that is material to this case: "The concentrated milk is then, as quickly as possible, to be filled into vessels made of plate tin, or other suitable material, which will allow of being closed hermetically, and also allow of being treated by heat, as hereinafter explained. The vessels I prefer for this purpose are cylinders, such as are shown at figure 5, and, in order that the upper end or cover may be readily removed by the simple act of cutting, I prefer that lead should be used all around, i. e., as is shown by the drawing. These vessels, being filled quite full with concentrated milk, are allowed to stand for twenty-four hours, when the vessels are soldered all around so as to hermetically close them." An exhibit introduced in evidence by the defendants, as being constructed in accordance with such description, is a cylindrical can made of ordinary sheet tin, some five inches in depth and four inches in diameter, one end of which is composed of a circular

[1] [Reported by Hon. Samuel Blatchford, District Judge, reprinted in 6 Fish. Pat. Cas. 457, and here republished by permission.]