**TEJAS DEVELOPMENT CO. et al. v. McGOUGH BROS. et al.**

No. 11955.

Circuit Court of Appeals, Fifth Circuit.

Dec. 30, 1947.

Rehearing Denied Feb. 7, 1948.

Arthur J. Mandell and Elias Gatoura, both of Houston, Tex., for appellants.

J. C. Hutcheson, III, and Fred R. Switzer, both of Houston, Tex., for appellees.

Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

The 136 printed pages of pleadings for the purposes of this decision may be summarized thus: The original petition to the district court was brought by McGough

Brothers, citizens of Minnesota, against Tejas Development Company of Texas, with more than $3,000 involved; and it alleged that on November 16, 1943, two contracts for construction of 150 buildings and the grading and paving of some streets in Texas were made between plaintiffs as contractors and defendant as owner, which contained an arbitration clause, hereafter quoted; that under it on Aug. 31, 1944, a submission to arbitration of certain disputes was had, resulting on March 31, 1945, in a final net money award against the Company of $54,598, with $2,030 costs and fees of arbitration. The prayers were for judgment on the award and that a portion of the contract for paving be reformed for mistake so as to increase the amount to be recovered by $1,400. This petition was answered on May 19, 1945, attacking the award on the grounds that during the arbitration the Company had receded from it, thereby blocking a final award, and that in any case the final award was based on information in a report to the arbitrators by an outside party appointed by the arbitrators without the knowledge or consent of the Company, who had made his investigation without notice to the Company and without opportunity afforded to it to present data and information, contrary to right and justice and due process. Third party defendants were then brought in by the Company, the contentions with whom we need not notice. On September 27, 1945, an amended complaint was filed which repeated in substance the original, and added a claim for a contractor's lien against the real estate for plaintiffs' work and materials, and a claim on a bond signed by the Company and one Kennedy as surety, given to secure plaintiffs. Kennedy was made a party, and the prayers were enlarged to include a judgment foreclosing the contractor's lien and a recovery against Kennedy, "and such other and further relief, general and special, at law and in equity, to which they may show themselves justly entitled." On January 7, 1946, a second complaint was filed which alleged that disputes under the same construction contracts had arisen after the first arbitration, and that on March 6, 1945, the plaintiffs made another demand for arbitration and that the

Company refused to appoint an arbitrator or participate in any arbitration, and that ex parte appointments and proceedings were had whereby an award was made Sept. 27, 1945, against the Company in a net amount of $24,942, and $1,226.51 costs and fees. The prayers were enlarged to cover these sums also. An amended answer was filed by the Company and Kennedy in which the right to stop the first arbitration, or in any event to attack the final award, because of misconduct of the arbitrators was reasserted and amplified; and also the second award was asserted to be void because the arbitration was repudiated from the beginning and consistently, the agreement to arbitrate being capable of revocation before award, and being an attempt to oust the courts of jurisdiction was voidable as contrary to public policy. Much evidence was heard, and the court made findings of fact and conclusions of law favorable to McGough Brothers, and granted reformation of the contract and enforcement of both awards as prayed. The judge held the federal Arbitration Act, 9 U.S.C.A. § 1 to 15, to be controlling, but if not, that taking part in the first arbitration committed the Company to arbitration of all disputes arising under the contracts so that it was bound by all that was done in both arbitrations, it being found as a fact that the proceedings were fair and in conformity to the arbitration clause of the contracts.

1. We do not think the federal Arbitration Act, 9 U.S.C.A. § 1 to 15, governs this case. Section 2, which undertakes to make agreements to arbitrate irrevocable and enforceable, expressly limits itself to contracts in maritime transactions and in commerce interstate and foreign. The regulation of those subjects is within the competence of Congress, and as to them the public policy is that which Congress has established. The validity and policy of contracts respecting the grading of streets and the building of houses in Texas are regulable by the State of Texas; and Section 2 has no application to or effect on such contracts. But it is argued that the enforcement sections which follow are in broader terms and cover all controversies involving arbitrations of which a federal

court may obtain jurisdiction, though only because of diversity of citizenship, as here. This may be true to the extent that the summary procedures by motion can be resorted to as a federal procedural matter; but that does not help here, for the question is not as to the method of enforcement of a valid award, but of the validity of the awards and the binding effect of the agreement to arbitrate, both of which are matters of State substantive law, since contract and arbitrament arose under State law. The awards can become no better by going into a federal court to enforce them than they would be in the State Courts. Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, and cases following it. Moreover, this is not a proceeding under those sections of the Act, but is a full scale plenary suit expressly brought under the Rules of Civil Procedure, with equitable remedies prayed for and granted.

■ 2. What then is the pertinent law of Texas? The common law was by statute made the law of Texas in 1840. That act appears now as Article 1 in Vernon's Annotated Civil Statutes: "The common law * * * shall * * * be the rule of decision, and shall continue in force until altered or repealed by the Legislature." The common law meant is that declared by the courts of the different States of the United States as suited to our condition. Great Southern Life Ins. Co. v. Austin, 112 Tex. 1, 243 S.W. 778; Grigsby v. Reib, 105 Tex. 597, 153 S.W. 1124, L.R. A. 1915E, 1, Ann.Cas.1915C, 1011. The Legislature has altered the common law by establishing in 1895, Vernon's Ann.Civ.St. art. 239 et seq., a mode of arbitration between employer and employees with which we have no concern here. Much older legislation is found in Vernon's Ann.Civ. Stats., Arts. 224 to 238, which applies generally, and provides for the parties to go into a court and there appoint arbitrators, with a submission under an order of court, the award to be made the judgment of the court. But this procedure is optional, the last Section, Art. 238, providing, "Nothing herein shall be construed as effecting the existing right of parties to arbitrate their differences in such mode as they may select." The parties here have not adopted this statutory mode, so that the effect of their general agreement to arbitrate, their submissions of the particular disputes, and the awards, stand under the common law as generally applied in the United States, with special reference of course to the decisions in Texas. We have specially to consider (1) the enforceability of a general agreement to arbitrate; and (2) the revocability before award of a submission of a dispute to chosen arbitrators.

■ In 5 C.J., Arbitration and Award, § 7, we read: "The general principle that courts favor arbitrations and will indulge every reasonable presumption to uphold arbitration proceedings is strictly limited to proceedings which have resulted in an award; in consequence of which submissions to arbitration cannot be specifically enforced and the parties to it may revoke it at any time before the award is made." And in § 92: "At common law as regards the power of the arbitrators to render an award which will be binding on the parties the general rule is well settled that either can revoke the submission at any time before an award has been made. The remedy of the party aggrieved is an action for a breach of the agreement to submit to recover damages, if any, caused by the revocation of the other party. The rule has at times been severely criticised, but it is too well settled to admit of doubt." See, also, 6 C.J.S., Arbitration and Award, § 33. Scores of cases are cited, and for Texas is cited Houston & T. C. R. Co. v. Newman, 2 Willson, Civ.Cas. Ct.App., § 349, to which we have not had access. However, in Ferguson v. Ferguson, Tex.Civ. App., 110 S.W.2d 1016, stipulated damages were allowed to be recovered for a refusal to abide an award, and in Memphis Cotton Hull & Fiber Co. v. Wilson Grain Co., Tex. Civ.App., 244 S.W. 1062, a suit to enforce an award or in the alternative for damages, was upheld as stating a cause of action. In Florida Athletic Club v. Hope Lumber Co., 18 Tex.Civ.App. 161, 44 S.W. 10, 14, we read: "It has been held that an agreement in an executory contract to refer all matters of dispute that may arise under the contract to arbitration will not oust the courts of jurisdiction (citing Amer-

280

ican. Cent. Ins. Co. v. Bass, 90 Tex. 380, 38 S.W. 1119, and other State and general authorities). The true rule seems to be that such a clause cannot oust the courts of jurisdiction, and, when invoked for that purpose, will be held void; yet, if the parties have, before the suit is instituted, proceeded with the arbitration under the contract, and an award, in the absence of fraud or mistake, has been made, suit must be on the award, and not on the contract." These principles are restated in 6 C.J.S., Arbitration and Award, § 33. In 3 American Jurisprudence, Arbitration and Award, Sects. 30 and 31, we read: "So long as agreements to arbitrate made in advance of a controversy remain executory, different rules prevail than in case of executed agreements. It is settled that in common law a general agreement in or collateral to a contract to submit to final determination by arbitrators the rights or liabilities of the parties with respect to any and all disputes that may hereafter arise under the contract is voidable at will by either party at any time before a valid award is made, and will not be enforced by the courts because of the rule that private persons cannot by a contract to arbitrate oust the jurisdiction of a legally constituted court." The same is true of an actual submission before final award. Id. Sects. 59, 66. The rule and the reason for it, and the limits of its application, are stated with his usual clarity and fullness by Judge Lamar, afterwards Justice of the Supreme Court of the United States, in Parsons v. Ambos, 121 Ga. 98, 48 S.E. 696. A clear summary of the law appears also in Red Cross Line v. Atlantic Fruit Co., 264 U.S. 109, 44 S.Ct. 274, 68 L.Ed. 582. The Supreme Court of Texas, in Scottish Union & Nat. Insurance Co. v. Clancy, 71 Tex. 5, 8 S.W. 630, 631, in upholding (as the courts generally have done and on the general authorities) an agreement in a fire insurance policy to have the loss appraised before a suit, said: "If the stipulation was to deny or repudiate the jurisdiction of the courts to determine the rights and liabilities of the parties arising upon the contract, we would hold, with the weight of authority, such stipulation void, But here the stipulation does not divest the courts of jurisdiction, but only

binds the parties to have the extent or amount of the loss determined in a particular way ` * * *." See also American Cent. Ins. Co. v. Bass, 90 Tex. 380, 38 S. W. 1119. No departure from the common law appears in the Texas cases.

■ The general agreement for arbitration in the present case is that all claims of owner or contractor and all other matters relating to the execution and progress of the work or the interpretation of the contract shall be decided by the architect and his decisions as to artistic effect shall be final, but all others are subject to arbitration; and "Art. 40: All disputes, claims or questions subject to arbitration under this contract shall be submitted to arbitration in accordance with the provisions then obtaining of the Standard Form of Arbitration Procedure of the American Institute of Architects, and this agreement shall be specifically enforceable under the prevailing arbitration law, and judgment upon the award rendered may be entered in the highest court of the forum, State or federal, having jurisdiction. It is mutually agreed that the decision of the arbitrators shall be a condition precedent to any right of legal action that either party may have against the other." There is no clear statement that the award is to be final, but it is implied in the agreement to have judgment entered on it. It is clearly agreed that "the decision of the arbitrators" must precede any action by either party. The two things together show that arbitration and not court trial is to settle all disputes. This is the very sort of agreement that the law says cannot be enforced so long as it is executory. The attempt to agree that it shall be specifically enforced amounts to nothing, for it cannot change the law. The agreement, however, is not wholly void as contrary to public policy, for the law favors willing arbitrations. It may even give damages. for a wrongful breach, as we have seen. But the law does not favor *unwilling arbitrations,* and therefore it permits either party to make a timely withdrawal from such contracts, and even from an actual submission prior to award.

■ It is suggested in argument that. withdrawal can be made by one party only

by filing a suit before the other party demands arbitration. We do not think so. The withdrawing party may have no claim, nothing to sue for, yet he has as much right to have the jurisdiction of the courts preserved as if he did. If no arbitrators have been appointed and no submission made, he may withdraw by notifying the other party that he refuses arbitration. This remits the person having a claim to his legal remedies, notwithstanding the agreement that arbitration is to be precedent to suit. It also gives him a claim to damages if the withdrawal is unjustified and gives rise to any. So also after submission but before award there may be withdrawal from the submission with like results. It is to be noted that we are not dealing with agreements for appraisals, or minor decisions by architects and engineers during construction made final that the work may go on, which are supported in Texas and elsewhere, but with claims relating to final settlements for work already done, involving disputes both of liability and amount.

3. The invalidity of the second award is clear. Appellant so soon as arbitration was proposed positively refused to appoint an arbitrator or to make a submission. It did not appear at any hearing or do anything that could be a ratification or waiver. The arbitrators appointed by others and proceeding ex parte could not make a binding award. The district judge thought that because the Company had made a submission the year before under these same contracts it had irrevocably committed itself. We do not think so. The two arbitrations had no connection with each other except that the disputes grew out of the same construction contracts. The disputes were different, the arbitrators were different. The general agreement to arbitrate remained executory as to the second set of disputes, and therefore not enforceable.

4. As to the first award, everything moved regularly until the arbitrators made a "preliminary award", determining liability on all the claims submitted by each party; but as to claims 1 and 2 for extra work and now the principal cause of suit, liability was found in favor of the contractors against the owner, but that some of the unit prices claimed appeared to be high, and the arbitrators were not in position to verify them, nor the exact quantities involved; so they recommended that an independent engineer satisfactory to both parties be designated, the cost to be shared by both parties. This preliminary award was dated Nov. 29, 1944. On December 9 the contractors wrote a letter to the arbitrators, with copy mailed to the owner but apparently never received, in which they praised the decisions of the arbitrators, including that about the engineer, but suggested that under Article 12 of American Institute of Architects proofs may be taken by the arbitrators at any time during the proceedings by receiving such other evidence as they may require, and they suggested "that the arbitrators appoint or engage a qualified independent engineer to make the necessary investigations into the matter of costs and quantity, and that the arbitrators then adopt the findings of the person * * * and incorporate these findings into the award. * * *" They offered their records for inspection and desk space for the engineer in their office, and to put up in escrow a suitable amount to guarantee the engineer's compensation. On December 11 the attorney of the contractors informed the attorney of the owner of the substance of this. On December 12 the owner's attorney wrote the contractors' attorney that he considered the arbitrators' mission was completed when they rendered their decision: "Neither do we believe the arbitrators can proceed in ex parte manner without advising us what they propose to do, how they propose to go about gathering the information they may think they need, and assess damages if any. * * * We are therefore now voicing our opposition to such procedure." A copy was sent the arbitrators. On December 21 the arbitrators wrote a letter to both parties to the submission, referring to the letters of December 9 and December 12. It said that the arbitrators considered "The conduct of the proceedings is necessarily informal and Article 16 of the A. I. A. Rules clearly gives the arbitrators authority to interpret and apply the rules as they see fit." They call attention to Article 11 as

to the arbitrators proceeding "in private to their deliberations prior to making the award" and to Article 12 that "Proofs may be taken by the arbitrators at any time during the proceedings by making inspections of the premises or material, or by ordering tests made of materials, or by receiving such other evidence as they may require." Therefore they "appoint Mr. Irving Peabody as the engineer to ascertain the true facts with respect to quantities and costs of disputed items, and we will advise the parties of the final award upon the completion of his investigations." The owner replied on December 27, protesting the appointment and the manner of it, and that the engineer had not contacted the owner and could not find the amount of work without hearing the parties; and concluding that the procedure "violated the fundamental principles of justice and fair play and is without the scope of the arbitration board and amounts to an ex parte procedure without giving all parties an opportunity to present their views. We cannot therefore see how we can possibly submit to such one-sided proceedings or any decision that may be rendered thereon." No further hearing was had, it does not appear what Mr. Peabody did or reported, but on March 31, 1945, the arbitrators made what they termed a final award which stated: "We have now received the findings of Mr. Peabody and based on his findings, and in knowledge of the individual arbitrators with respect to the facts of the case and with respect to their general knowledge of building costs, make the following awards." In the details which follow Mr. Peabody's findings are frequently mentioned as the basis of quantity findings. His report, however, has never been made known to the parties. His fee of $530 was awarded to be paid one-half by each party.

The arbitrators misunderstood their authority and violated the rules of procedure under which it was agreed they should act, and this misconduct invalidates the award, at least on the items dealt with in the final award. After the preliminary award it was too late for the Company to withdraw from this submission, and the contention that this was effectually done cannot be sustained. But the protest made rebuts any idea of acquiescence or waiver as respects the appointment of the engineer Peabody. Nor can the plaintiffs' contention that after all the arbitrators acted on their own information and judgment be sustained. Very clearly they acted in large part on Peabody's findings and report. If Peabody was an assistant arbitrator, as the letter of December 9 of the plaintiffs and the words of his appointment indicate, the arbitrators were without authority to appoint him as such. If he was only an expert to inform himself and give them the facts he learned and his opinions, we think the arbitrators could employ him as such, but he thereby would become a witness, and his report only evidence to be testified to by him in an open hearing with the parties present to cross-examine him and correct him by other evidence. Article 16 of Arbitration Procedure is: "The arbitrators shall interpret and apply the provisions of this Standard Form of Arbitration Procedure," —not "as they see fit," but according to the fair and reasonable meaning. This rule gives them a duty, not a license. Article 11 provides that each party and his witnesses shall be heard and may be questioned by the other or his counsel and "when all pertinent and material evidence has been submitted by the parties the arbitrators shall formally close the hearing and proceed in private to their deliberations prior to making the award." This does not authorize the taking of evidence in private. Article 12 provides: "Proofs shall be taken in the presence of the parties and in the presence of all the arbitrators, unless a party has absented himself by its own fault after due notice that such proofs will be taken, unless the parties have mutually authorized such proofs be taken in their absence." The Company here was never notified that Peabody's evidence was to be taken, nor authorized the taking in its absence, though perhaps the plaintiffs by their letter of December 9 did. The Article provides further that "Proofs may be taken by the arbitrators at any time during the proceedings by making inspections of premises and materials or by ordering tests made of materials and by receiving such other evidence as they may require." It is agreed that the arbitrators did not make any

inspection of premises or materials with Peabody, and we have already held that what was learned by him could only be evidence. His evidence they could have received, but only in accordance with the first sentence of Article 12. The sentence, "Proofs shall be received in privacy unless the parties direct to the contrary," cannot mean "in the absence of the parties," in contradiction of all the other provisions of Articles 12 and 11, but means that the hearing shall not be in public unless so agreed. We may suppose that this conduct of the arbitrators was in good faith and well meant, but it was clearly such misconduct as nullifies the final award. 6 C.J.S., Arbitration and Award, § 63; 3 Amer.Jur., Arbitration and Award, § 143. Jackson v. Roane, 90 Ga. 669, 16 S.E. 650, 35 Am.St.Rep. 238, is in point.*

▆▆▆ 5. The final award relates only to items 1 and 2 and 3 of those submitted. Does the misconduct touching these vitiate the preliminary award on the other items? This question has not been argued before us. If the other items are really independent disputes, and if the submission does not provide otherwise, it would seem that the complete decisions made before the misconduct occurred may stand. 3 Amer. Jur., Arbitration and Award, § 134. The parties here have taken no stand on this question and the district court did not decide it, so we leave it open. The $1400 item adjudged on the reformation of the grading contract for mutual mistake was one of the claims submitted to the arbitrators and disposed of in their preliminary award. The Company had urged upon the arbitrators that they could not reform a contract, and the plaintiffs now say that their award disallowing the $1400 is a decision that they had no jurisdiction. The Company claims it is a decision that there was no mutual mistake in the contract.

The latter seems to us to be the true meaning of the award which makes no mention of jurisdiction nor of reformation, but disallows the claim of $1400. Arbitrators we think have power to do justice about a mistake in writing up a contract if the matter is submitted, and to allow or disallow money claims arising out of the mistake. If this part of the award stands, a contrary finding by the court is not permissible.

▆▆▆ 6. If the award on this claim falls, the court was nevertheless in error in granting reformation and allowing the $1400 in addition to the price fixed by the contract as signed, because it is not squarely found that the contract was signed by mutual mistake, and no consideration was given to the pleaded and apparently proved defense against reformation, that after the contract was signed appellant Kennedy, being about to buy the entire capital stock of the Company and making enquiry into its assets and liabilities by his own agent, asked the plaintiffs, they knowing his purpose, if the contract was as it appeared and if the work would be done for the amount it fixed, and was assured it would be. Kennedy acted on that assurance and bought the stock and took over the Company. Later he became surety for the Company, and has been sued and held liable along with his Company in this case. It is technically correct, as is argued by the plaintiffs, that Kennedy is not a purchaser of anything except the shares of stock against which they claim no equitable relief, and so is not a bona fide purchaser to be protected against the mistakes of the Company made before he came into control. But the appellants in their answer claim the conduct of the plaintiffs is in equity also an estoppel on them to attack the contract which they said was correct, after Kennedy has acted on their assurance to his injury.

* Twin Lakes Reservoir & Canal Co. v. Platt Rogers, Inc., 112 Colo. 155, 147 P.2d 828, 833, relied on by appellees, is not in point. It recognizes the general rule that arbitrators cannot delegate to another the whole or any part of the authority granted them; and is rested on a provision of the submission there involved, that the arbitrators may "make such independent investigation of the matters in controversy as to them may seem necessary in order to arrive at a correct solution of the matter." There is no such provision in this case. The arbitrators here could only make inspections and order tests of materials and receive other evidence if required, during the proceedings. This falls far short of making an *independent investigation* of the controversy.

284

In a broad sense he was buying the assets of the Company subject to its liabilities, and the money to be due on this contract was one of the liabilities. In the present case the plaintiffs have appealed to equity and must do equity. They have impleaded Kenedy, and must do equity by him as well as the Company. The contention as to estoppel which he and the Company have raised deserved attention and a fact finding by the judge. Whether the $1400 claim is concluded by the award, and, if not, whether a mutual mistake was made, and whether the contractors may have reformation as against the estoppel pleaded, we leave open for further trial.

7. The judgments against the third party defendants as liable over of course fall with the judgments which were rendered against the Company and Kennedy. That is to say, the entire decree appealed from must be set aside.

What further proceedings are possible to determine all the controversies by a shift in the pleadings we do not suggest, further than to say that on failure of an arbitration for any cause the parties are in general remitted to their former rights. See 3 Amer.Jur., Arbitration and Award, § 66.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed.