**J. H. ARRINGTON and Metropolitan Paving Co., Inc., a corporation, Plaintiffs,**

**v.**

**EL PASO NATURAL GAS CO., a corporation, Defendant.**

**Civ. No. 9478.**

United States District Court
W. D. Oklahoma.

Sept. 18, 1964.

Barefoot, Moler & Bohanon, Oklahoma City, Okl., for plaintiffs.

Cochran, Dudley, Fowler, Rucks, Baker & Jopling, Oklahoma City, Okl., for defendant.

DAUGHERTY, District Judge.

This case involves the interpretation of and performance under a written contract between the plaintiffs herein (and their assignors) and the defendant. Under this contract the plaintiffs assigned to the defendant the gas rights only in certain oil and gas leases covering properties in Texas for a cash consideration of $56,605.00 based upon estimated gas reserves thereunder, which consideration was paid, plus an agreement by the defendant for further development within a specified two year period following which a reevaluation of the estimated gas reserves under the properties would be made with $0.03 per MCF to be paid by defendant to plaintiffs for any additional reserves found to exist above those originally estimated between the parties when the contract was entered into. The contract was dated December 20, 1957, the additional wells were to be drilled within a two year period ending March 21, 1960, and the reevaluation of the gas reserves was to be made by respective representatives of the parties on or about June 30, 1960.

The provisions of the said written contract pertinent to this litigation are as follows:

"Within two (2) years from the date of closing, you agree to drill, or cause to be drilled, sufficient test wells on the subject lease or on leases owned by you adjacent thereto a sufficient number of test wells to enable our respective representatives to make the evaluation provided for hereinbelow. If sufficient information as to the recoverable gas reserves underlying the subject leases can be acquired without drilling wells on the subject leases, or to the maximum permissible density on the subject leases, you shall not be obligated to drill the same if such information can be obtained by conducting drilling operations on adjacent leases. Such wells shall be drilled by you, at your sole cost, risk and expense, to a depth sufficient to test the Dolomite or Granite Wash formations.

"On June 30, 1960, representatives of your company and my representatives shall redetermine and reevaluate the recoverable gas reserves underlying the acreage described hereinabove (which has not been reassigned to me or which has not been released or relinquished pursuant to the applicable provisions of this agreement) attributable to the net interest I have assigned to you therein. In the event our representatives cannot agree on the reevaluation and redetermination of the recoverable gas reserves as of said date, then, in such event, such reserves shall be reevaluated and redetermined by a mutually agreed upon independent evaluation engineer or a firm of independant engineers. The decision of such evaluation engineer(s) shall be final and binding upon the parties hereto, and all expenses incurred in connection with such reevaluation and redetermination by said independent evaluation engineer(s) shall

be divided equally between the parties hereto."

" * * * Provided, however, that in the event you should desire to release or relinquish any portion of the subject properties, either by the failure to pay delay rentals or otherwise, at any time subsequent to the date hereof, you shall so notify me, in writing, and I shall have a period of thirty (30) days following receipt of such notice within which to notify you, in writing, that I desire a reassignment of any such lease, and you shall, within thirty (30) days following receipt of my notice as aforesaid, reassign to me the entire right, title and interest in any such lease insofar as same covers lands, the gas leasehold interest in which you so desire to release or relinquish, which I have assigned to you pursuant to this agreement. In the event I fail to notify you within said period that I do not desire reassignment of such gas leasehold estate, you shall have the right to release or relinquish the same, and you shall have no further liability therefor to me. As to any portion of the subject lands which is either reassigned to me or released and relinquished by you as aforesaid, the gas reserves under any such lands, if any, shall not be considered in making the reevaluation and redetermination of recoverable gas reserves as provided for hereinabove."

The leases were duly assigned to the defendant on March 21, 1958, and certain development took place in the areas involved by the defendant and others during the said two year period which began on March 21, 1958, the date of closing, and ended on March 21, 1960. The leases finally involved were situated in eight different sections and will be treated under the following eight descriptions with the development pertinent to each within

the said two year period set out under its description:

1. *Section 43, Blk. 23, H. & G. N.*

Defendant drilled a well in the S. W. ¼ of this Section under 160 acre spacing, a west off-set well under 640 acre spacing, and also drilled a well in the Section to the south. Another company drilled a north offset which was a dry hole.

2. *E½ of E½, Section 63, Blk. 23, H. & G. N.*

This 160 acres was united with the balance of the acreage in the section to form the required 640 acre spacing unit. Defendant drilled a well in this spacing unit (S. W. ¼) and also drilled a west and south offset. A dry hole had previously been drilled in the north offset. Defendant owned no leases in the east offset but another company drilled a dry hole in an east offset location.

3. *Section 10, Blk. 23, H. & G. N.*

Defendant drilled a well in the N. ½ of the section to the north. Another company drilled a dry hole in the S. ½ of the section to the north. A dry hole had previously been drilled in the center of the section to the north. The parties relinquished this lease in April, 1960, as developments in the field showed this section to be down structure from the probable gas-water contact line.

4. *NE¼, Section 104, Blk. 22, H. & G. N.*

The defendant drilled a north offset and a northeast diagonal offset. Another company drilled an east offset. The defendant did not drill a west offset on which it owned the lease but did drill in the section to the west one spacing unit removed. Another company drilled a dry hole in the section to the south.

5. *SW¼, Section 71, Blk. 16, H. & G. N.*

Defendant owned no offsetting leases to the north, west or south but had the lease on the east offset. Another company drilled the north offset and the southwest diagonal offset. The defendant did not drill the east offset but drilled

two wells in the section to the east. There was a previous dry hole in the northeast diagonal offset.

6. *NE¼ Section 70, Blk. 16, H. & G. N.*

Defendant drilled the northeast diagonal offset and a second well in the northeast diagonal section and wells in the sections to the east and south. Another company drilled wells in the sections to the north and west.

7. *19.29 acres in NW¼ NW¼ Sec. 36, Blk. 17, H. & G. N.*

A defendant farmout well was drilled in the south part of this section (a south offset location) and another well in the section to the north.

8. *E½ NE¼ Section 35, Blk. 17, H. & G. N.*

A defendant farmout well was drilled in the section to the east (SE diagonal offset) and the northeast diagonal section. There was a dry hole on this tract unknown to any of the parties until shortly before trial.

The language of the written contract between the parties provided for sufficient test wells on each lease or on leases owned by defendant adjacent to each lease to enable a reevaluation. It thus becomes necessary to determine, first, what is an adjacent lease under the contract, and then, second, what drilling operations are essential to provide sufficient information to enable representatives of the parties to redetermine and reevaluate the underlying gas reserves as to each lease.

This contract covers Texas property, was to be performed in Texas, and is governed by Texas law. See Cowley v. Anderson, 10 Cir., 159 F.2d 1. Under Texas law adjacent (leases) need not be contiguous nor touching but may be removed from the subject property (lease). The following Texas cases would seem to settle this point:

In State of Texas ex rel. Pan American Production Co. et al. v. Texas City, Texas, et al., 157 Tex. 450, 303 S.W.2d 780:

"The term 'adjacent' is not a word of fixed or definite meaning. The authorities are almost unanimous in according to that term the meaning of 'neighboring or close by' or 'in the vicinity of and not necessarily contiguous or touching upon.' The meaning is determined to some extent by the context or by the subject matter. State v. Camper, Tex.Civ. App., 261 S.W.2d 465, wr. ref. * * "

In Broun et al. v. Texas & N. O. R. Co. (Tex.App.) 295 S.W. 670:

"The word 'adjacent' has been variously used in the sense of 'abutting,' 'adjoining,' 'contiguous,' 'attached,' 'beside,' 'bordering on,' 'close or nearby,' 'close or contiguous, but not touching,' 'near,' 'close,' 'in proximity,' 'neighboring but not necessarily in contact.' 1 C.J. 1196; 1 A. & E. Ency. of Law (2d Ed.) 633. In United States v. St. Anthony Railway Company, 192 U.S. 524, 24 S.Ct. 333, 48 L.Ed. 548, where an act granted to certain railroads the right of way through public lands, with the right to take materials for the construction of their lines from the public lands 'adjacent' to the line of the road, it was held that lands within two miles of the right of way were adjacent. That which is adjacent may be separated by some intervening object. Baxter v. York Realty Company, 128 App.Div. 79, 112 N.Y. S. 455, 456. A thing is adjacent to another when it lies near or close to it, although it is not in actual contact therewith. Yuba County v. Hayes Mining Co., 141 Cal. 360, 74 P. 1049. The natural and primary meaning of the word 'adjacent' is near to, or neighboring. It is not inconsistent with the idea of something intervening, and has been defined as 'lying near to but not actually touching,' 'in the vicinity of neighborhood of.' 1 C.J. 1196; 1 A. & E. Ency. of Law (2d Ed.) 633. The term 'adjacent' is relative and not a definite and absolute one, and the exact meaning of the word is determinable principally by the context in which it is used, and the facts of

each particular case, or by the subject-matter to which it is applied. Railway v. Institute, 239 Ill. 197, 87 N.E. 933, 939; Bacon v. Railroad, 83 Vt. 528, 77 A. 858, 861. Appellants insist upon an interpretation of the word in the sense of 'adjoining.' While the words 'adjacent' and 'adjoining' are sometimes used as synonymous in their ethnological sense, yet strictly speaking there is a difference. That which is adjacent may be separated by some intervening object; that which is adjoining must touch in some part. Baxter v. York Realty Co., 128 App.Div. 79, 112 N.Y.S. 455, 456. According to the more approved definitions, the word 'adjoin' or 'adjoining' carries with it the idea of actual contact and touch.

"We do not believe that the parties to the deed in question intended that 'adjacent' to block 42 should be understood to mean 'touching' block 42, for then it would be adjoining. * * * "

In El Paso Land Improvement Co. v. Crawford (Tex.Com.App.) 292 S.W. 518:

"Deed conveying joint use and possession of any and all walls of hotel adjacent to surface boundary lines conveyed such use and possession as to any wall located close or near to or in the immediate neighborhood of the surface boundary lines as well as those coincident therewith; such being the popular and technical import of the words 'adjacent to' ".

The defendant was the major operator in this field owning a great number of wells and leases therein. Some very few of these leases touched or adjoined the eight tracts here involved but a great number of them did not but were in the vicinity of or close by each of the leases. Experts testifying in this case stated that development on properties as far away as one-half to one mile from subject leases would provide information upon which evaluation determinations could be made with reference to subject leases in view of the gas formations and pertinent geology involved.

■ Under the facts and circumstances of this case the Court is of the opinion and, therefore, finds that the parties used the word "adjacent" under Texas law and to cover and include leases which were not contiguous or touching but in the vicinity of or close by the subject leases so as to provide information of benefit in the contemplated reevaluation. It must be realized that it is possible to reevaluate the underlying gas reserves with but little more information than possessed when the original evaluation was made. A reevaluation could be made only on performance data within the two year period of existing wells near enough to be geologically pertinent. Certainly, a new well on a lease would present the optimum in information for a reevaluation. But the contract does not require this. It calls for less. General field trends and obvious outer limits of the field even though some miles away cannot be disregarded in any reevaluation. Thus it is that the Court must examine all the facts and circumstances under Texas law and determine if fair and reasonable development has taken place within time as to each lease to satisfy the plain and practical meaning of the contract.

■ In this connection, the contract is not absolutely clear with reference to the propriety of considering drilling developments by others in the vicinity of the leases involved with reference to the test well requirement and the reevaluation to be subsequently made. It is clear that the defendant need not drill the test wells but only cause them to be drilled. Also, the contract provides that the defendant shall not be obligated to drill on the lease if sufficient information for the reevaluation can be obtained by conducting drilling operations on adjacent leases. This language is broad enough to embrace drilling operations of others on adjacent leases which will provide the

required information. To anyone familiar with the oil industry it is inevitable and generally understood that nearby drilling developments and results by others which would bear on any of the contract obligations of the parties here would and should be considered by them, certainly in the matter of the reevaluation and also in the matter of the test well requirement. In other words, if others owning nearby leases drilled same or a sufficient number of same to prove the value of a subject lease, it would appear that drilling operations on adjacent leases has been performed which provides sufficient information for a reevaluation.

■ Based on the developments pertinent to each lease as above detailed, the Court is of the opinion and finds that the leases and each of them were adequately and reasonably tested within the meaning and intent of the parties and within the prescribed time period so as to permit a reasonable reevaluation on or about the date agreed upon. See Watchorn v. Roxana Petroleum Corporation (8 Cir.), 5 F.2d 636. The Court further finds that the leases in Section 10, Section 35, Section 36, and Section 70, were relinquished by the parties in keeping with the provisions of the contract and are not to be considered in respect to said reevaluation.

■ The language regarding the reevaluation to be made is not as precise as it could be and is subject to different interpretations or meanings, particularly as to the method of execution. It provides for respective representatives of the parties to make a new evaluation. This would seem to indicate that these representatives must mutually reach an agreement before there would be a reevaluation by them. The contract also provides that if they (respective representatives) cannot agree upon a reevaluation then such gas reserves shall be reevaluated by a mutually agreed upon independent evaluation engineer or firm of independent engineers. In this case, the defendant, prior to the date specified for the reevaluation, made a unilateral reevaluation based upon information in its possession and submitted same to the plaintiffs with an invitation to the plaintiffs to review the data upon which the reevaluation was made and to concur in the same. The plaintiffs thereupon did call for the data on which the defendant reevaluated, which was furnished. Nothing further transpired between the parties regarding the reevaluation until plaintiffs brought this litigation some 15 months later. As above stated, the contract contemplates both parties agreeing upon a reevaluation. It does not, however, specify the details as to just how this will be accomplished. Thus, in view of the vague or inadequate nature of this feature of the contract (which was drawn by the plaintiffs) and the actions of the parties the Court cannot hold that the plaintiffs would be entitled to sit back and rely on an alleged breach of the contract by the defendant respecting the reevaluation rather than to take some positive action to effect an agreement or disagreement on the reevaluation. In fact, it appears that only by the act of filing this litigation have the plaintiffs evinced disagreement over the evaluation made by the defendant. This disagreement thus demonstrated, under the contract of the parties, requires an independent reevaluation which has not as yet been undertaken. Such independent reevaluation is not an arbitration agreement (and void under Texas law) but rather amounts to an appraisement and is valid and binding on the parties under Texas law. The distinction between the two types of provisions (arbitration and appraisement) has been considered in Texas in the case of Huntington Corporation v. Inwood Construction Co., Tex.App., 348 S.W.2d 442, as follows:

"'A provision in an executory contract that any disputes arising out of the contract are to be settled by arbitration is against public policy in attempting to oust the courts of jurisdiction, and when such a provision is invoked for that purpose it will be held void.' 6 Tex.Jur.2d § 20, et seq., pp. 56, 57, 58; citing Scottish Union & National Insur-

ance Co. v. Clancy, 71 Tex. 5, 8 S.W. 630; American Central Insurance Co. v. Bass, 90 Tex. 380, 38 S.W. 1119; Queirali v. Whitesides, Tex.Civ.App., 206 S.W. 122; Dozier v. City of Gatesville, Tex.Civ.App., 4 S.W.2d 131; International Brotherhood of Electrical Workers, Local Union No. 59, A. F. L. v. Whitley Elec. Service Co., Tex.Civ.App., 278 S.W.2d 560; Tejas Development Co. v. McGough Bros., 5 Cir., 165 F.2d 276. * * * And in this connection see 135 A.L.R., p. 79 headed 'Validity of agreement to submit all future questions to arbitration'. On page 80 of 135 A.L.R. it is stated: 'In most jurisdictions wherein the subject has been judicially considered, the rule recognized is that, in the absence of statute to the contrary, a provision whereby parties to a contract stipulate to submit to arbitration 'any' or 'all' future disputes which may arise thereunder is invalid, or at least 'unenforceable'.

\* \* \* \* \* \*

"Equally well settled, however, is the distinction between *arbitration* and *appraisements;* and provisions of the latter type (common to insurance policies) that the *amount* of any loss suffered by the insured must be determined before suit is brought will be given effect. 6 Tex.Jur.2d § 22, p. 58. This is illustrated in Scottish Union and National Insurance Co. v. Clancy, supra, where our Supreme Court approved the stipulation in an insurance policy providing for appraisement of loss or damage only; holding in part: 'But here the stipulation does not divest the courts of jurisdiction, but only binds the parties to have the extent or amount of the loss determined in a particular way, leaving the question of liability for such loss to be determined, if necessary, by the courts' ".

Also, see McBride v. Beaumont City Lines, Tex.App., 356 S.W.2d 395; Tejas Development Co. v. McGough Bros., 5

Cir., 165 F.2d 276; and 5 Am.Jur.2d 520 (Sec. 3) at page 549.

The Court therefore concludes that "adjacent leases" as that term was used in the contract of the parties, does not mean adjoining or contiguous leases, but means leases in the vicinity of or nearby the subject leases at such distances as would provide geological information pertinent to a reevaluation of the properties; that adequate and reasonable testing had been done as to all leases within the prescribed time to permit a reasonable and fair reevaluation of the underlying gas reserves within the meaning of the contract between the parties; that the contract provisions regarding the reevaluation procedure are vague and inadequate as to the details of accomplishment; that the reevaluation to be made by the respective representatives of the parties has not and was never accomplished; that the timely unilateral reevaluation submitted to plaintiffs by the defendant was a reasonable and permissible procedure under the language of the contract and under the circumstances of the case; that only by filing this suit have the plaintiffs declared that said timely unilateral evaluation of the defendant is not agreeable to them; that by the act of filing this suit, such results in a disagreement between the parties and their respective representatives as to an agreed reevaluation of the underlying gas reserves; that the defendant to this time has not breached any of the provisions of the contract of December 20, 1957; that the leases in sections 10, 35, 36 and 70 have been properly and timely relinquished by the parties under the contract and cannot be considered in any reevaluation to be made; that by reason of said disagreement on a reevaluation between the parties and their respective representatives the parties must resort to the independent appraisement procedure prescribed in the contract between the parties; that such appraisement procedure is valid and binding on the parties and since the same has not been undertaken as provided and agreed upon, this suit is premature and cannot be sustain-

ed in the sense of granting the relief requested by the plaintiffs.

Judgment therefore should be entered in favor of defendants on the issues presented and decided herein. Counsel for the defendant will prepare a judgment in conformity with the foregoing for the signature of the Court and entry herein.