**D. P. BROWN, Appellant,**

v.

**Joe R. EUBANK, Appellee.**

**No. 17302.**

Court of Civil Appeals of Texas.

Dallas.

June 13, 1969.

Luther Truett, of Moses & Truett, Mc-Kinney, for appellant.

Roland Boyd, of Boyd, Viegel & Gay, McKinney, for appellee.

BATEMAN, Justice.

Our former opinion is withdrawn and the following substituted for it.

This is a boundary dispute which was submitted to arbitration. The appeal is from a judgment reciting that it is based upon the award of the arbitrators.

The first trial of the case resulted in a judgment establishing the boundary, but this judgment was reversed and remanded. Brown v. Eubank, 378 S.W.2d 707 (Tex.Civ.App., Tyler 1964, writ ref'd n. r. e.). Thereafter, on March 1, 1965, the trial court entered an order, which was also signed by the parties and their attorneys, as follows:

"On this 1st day of March, 1965, came on to be heard the above and entitled cause and came the parties in person and through their attorneys of record and announced to the Court that the matters in controversy between them had been compromised as follows:

"The parties have agreed that Joe R. Eubank will select a person to serve on a board of arbitration to settle the dispute, that D. P. Brown will select a second member of such board and that the Judge of this court will select the third member, such third member to be a State licensed land surveyor. Said surveyor shall proceed to survey both the Brown tract and the Eubank tract to the extent necessary to determine, as near as possible, the boundary lines between the respective tracts owned by the parties. After such survey has been completed the Board of Arbitration will consider such survey and all matters in controversy between the parties and shall, based upon their findings therein, locate the property lines between the parties. The decision of such Board shall be conclusive, final and binding upon both parties without right of appeal. Such decision shall consist of no written record except field notes describing the respective tracts owned by the parties and delineating the respective common lines, which shall be evidenced by permanent boundary markers or monuments, and upon such decision having been filed with the Court the Court shall render judgment thereon vesting or divesting title as the case requires.

"The Court having considered said settlement is of the opinion and finds that the same should be approved and it is therefore ordered that the terms thereof be implemented by the parties each furnishing to the Court the name of the respective members of the Board by not later than Monday, March 8, 1965.

"All costs of this arbitration and survey shall be borne jointly by and between

plaintiff and defendant irrespective of the placement of the line.

"The Board of Arbitration will function under such procedures as may be prescribed by this Honorable Court in its sole discretion.

"IN WITNESS of the foregoing this order is entered and rendered on this 1st day of March, 1965.

"David H. Brown, Judge"

In the discussion leading up to this order, Judge Brown stated that he would select as the third arbitrator a licensed land surveyor who did not reside in Collin County. Eubank selected Fred G. Agnew as an arbitrator and Brown selected Jack Anderson. In February 1967, nearly two years after the entry of the said agreed order, Judge Brown selected John V. Cantrell, a licensed land surveyor of Collin County. By letter dated February 15, 1967, Brown's attorney wrote Judge Brown, in part, as follows:

"Frankly, I am disturbed about the arbitration as it was my understanding two years ago that the third arbitrator was to be an out of county surveyor and same was discussed even though the 'out of county survey' was not included in the arbitration as signed. While the surveyor named is a personable young man and so far as I know competent, I am disturbed over the fact that Mr. Boyd's firm has represented approximately 95% of his family as far back as I can remember and there are manifestations already afoot that don't look good. *I realize I am tied, however.*" (Italics ours.)

Judge Brown did not reply to that letter. At some time in the spring of 1967 the three arbitrators met in Judge Brown's office and heard the attorneys state the positions of their respective clients. On one or two other occasions in the spring or summer of 1967 Brown's attorney again complained to Judge Brown of his appointment of Mr. Cantrell instead of an out of county surveyor. In November, 1967, after having talked to the parties separately on their respective farms, and after some surveying had been done, the three arbitrators met and Cantrell sent the following letter, dated November 9, 1967, to Judge Brown:

"In regard to the Brown v. Eubanks Land Dispute, I am enclosing a tentative settlement agreed upon by the three commissioners appointed by you.

"I have attempted to write this in such form that will be approved by you. Please look it over and if satisfactory, return it to me and I will have the commissioners sign same."

Attached to that letter was a set of field notes describing the boundary line between the two farms and providing at the bottom places for signatures of the three arbitrators. However, the field notes were unsigned.

Cantrell told Judge Brown that Anderson would not agree to the decision. Judge Brown testified that he "was disturbed because it was not going to be unanimous," and that he laid the letter and field notes aside without taking any action on them. On January 4, 1968, Brown's attorneys filed a pleading in which they "respectfully withdraw their offer to arbitrate as per agreement of March 1, 1965," on the grounds that the terms of arbitration had never been consummated, that the surveyor named by the court was not an out of county surveyor but was a man born and reared in Collin County, and that Brown was then a man past 89 years of age "and would like to have the matter disposed of." They requested that the court set the case for jury trial. No action was taken immediately on this request.

On March 22, 1968 the District Clerk of Collin County placed her file mark on another copy of the field notes, dated February 22, 1968 and signed by Cantrell and Agnew, identical to the field notes attached to Cantrell's letter to Judge Brown of No-

vember 9, 1967, and filed the same among the papers of this cause.

On March 25, 1968 Eubank filed his motion for judgment based upon the report of a majority of the arbitrators. Brown filed a contest of that motion on the grounds that the terms of the arbitration agreement were not carried out, in that (1) the judge had named a Collin County man to be the surveyor and third arbitrator, contrary to his oral statement made at the time of the arbitration agreement, (2) no survey field notes describing the respective tracts owned by the parties and delineating the respective common lines were ever submitted to Mr. Anderson, the arbitrator chosen by Brown, until March 23, 1968, more than two months after Brown had withdrawn his agreement to arbitrate, and (3) he was entitled to a jury trial. Judge Brown recused himself and the matter was heard by Honorable W. C. Boyd, Judge of the 16th Judicial District of Texas, sitting for Judge Brown. Judge Boyd heard the matter without the aid of a jury and rendered judgment for Eubank based on the field notes submitted by the two arbitrators, and specifically denying Brown's motion to withdraw from the arbitration.

By his first point of error on appeal Brown complains of the judgment because he had timely withdrawn his agreement to arbitrate. In his second point of error he complains of the refusal of his timely demand for a jury trial. These points will be considered together, for they both raise the specific question of whether Brown had the right to revoke his agreement to submit the controversy to arbitration.

■ The general rule is that either party may revoke a common law submission to arbitration at any time before an award has been made, leaving to the aggrieved party his action for damages for breach of con-

tract. 6 C.J.S. Arbitration and Award § 33, p. 173; 6 Tex.Jur.2d, Arbitration and Award, § 22, p. 58; Tejas Dev. Co. v. McGough Bros., 165 F.2d 276 (5th Cir. 1947); Deep South Oil Co. of Texas v. Texas Gas Corp., 328 S.W.2d 897, 906 (Tex.Civ.App., Beaumont 1959, writ ref'd n. r. e.).

■ However, if the submission was under the Texas arbitration statutes·then in effect,[1] the agreement filed thereunder would have bound the parties to that mode of trial. 6 Tex.Jur.2d, Arbitration and Award, § 25, p. 59.

■ The appellee Eubank urges that this was a statutory arbitration, although not so denominated, and that in any event, having been made in the form of an order of the trial court, signed by the judge thereof and entered in the minutes of the court, it was made under a "rule of court" and therefore so binding on both parties as not to be revocable by either of them. We agree with appellee in the second contention.

We consider it unimportant whether the parties intended this to be a statutory arbitration, and hence do not decide whether the agreement was in substantial compliance with the statutes. Forshey v. Galveston, H. & H. Railroad Company, 16 Tex. 516 (1856). It is our opinion that under the circumstances presented by this record Brown did not have the right to withdraw from the arbitration agreement. It has been held in other jurisdictions that arbitration agreements which would otherwise be considered common law submissions, when made under a "rule of court," are irrevocable. No Texas case to that effect has come to our attention, but in our opinion the reasoning underlying the doctrine is sound and should be recognized here.

1. Vernon's Ann.Civ.St., Articles 224 to 238. These statutes were revised in 1965, effective January 1, 1966, but as the arbitration agreement in this case was made on March 1, 1965, we consider herein only the statutes in effect prior to such revision.

Bouvier's Law Dictionary, Third Revision, defines "rule of court" as follows:

"An order made by a court having competent jurisdiction. Rules of court are either general or special; the former are the laws by which the practice of the court is governed; the latter are special orders made in particular cases."

In this case the arbitration agreement was more than a mere common law contract entered into by men with conflicting claims; it was actually an agreed order of the court in a case which had been previously tried, reversed on appeal and remanded for a new trial. The parties stipulated that, rather than try the case again, they would submit the controversy to arbitration. This was submitted to the court and adopted by the court by the order hereinabove quoted. We think the parties then became irrevocably bound to that mode of trial. A very similar situation was involved in Hastings v. Jones, 18 F.2d 833, 834 (7th Cir. 1927, Cert. Den.), wherein it was said:

"The acceptance of and the action upon this stipulation by the court, in open court, even if such action merely amounted to a reference to himself as an arbitrator, was an adoption of it as a rule of practice, a method of procedure in the cause. * * * The submission was thus made a special rule of court, and was not revocable."

In 5 Am.Jur.2d Arbitration and Award, § 43, p. 552, we find this language:

"Where a submission to arbitration is made under a rule or order of a court of law or equity, whether pursuant to statute or otherwise, and whether or not it is of a pending action, it cannot be revoked at the pleasure of a party, or even by consent of parties, without leave of the court."

Other authorities to the same effect will be found in the footnote.[2]

Accordingly, we hold that the attempted withdrawal from the arbitration agreement by Brown was ineffectual, and his first two points of error are overruled.

■ By his third point of error, Brown says the judgment is void because the trial court did not appoint an out of county surveyor as promised. Both parties submitted all of their evidence to the three arbitrators, and Brown made no effort to rescind or withdraw from his agreement until January 4, 1968, nearly a year after Cantrell's appointment and several weeks after two of the arbitrators had agreed upon a decision. At no time has it been contended that the appointment of an out of county surveyor was a condition precedent to the arbitration proceedings. We hold, therefore, that the complaint was waived. Moreover, no showing is made that Brown suffered any harm by reason of the failure of the judge to appoint an out of county surveyor and, under Rule 434, Vernon's Texas Rules of Civil Procedure, the error, if any, was harmless.

■ Appellant's fourth point of error complains that the trial court did not follow the arbitration agreement that the lands of the parties be surveyed so as to determine properly and with certainty the boundary line between them. This is based on undisputed evidence that surveys of the entire tracts of land were not made. However, the arbitration agreement itself provided only for a survey "to the extent necessary to determine, as near as possible, the boundary lines between the respective tracts". According to the evidence, there was sufficient surveying to satisfy at least

2. Bray v. English, 1 Conn. 498; Inhabitants of Cumberland v. Inhabitants of North Yarmouth, 4 Maine (4 Greenl.) 459; Masterson v. Kidwell, Fed.Cas.No. 9,269 (2 Cranch, C.C. 669); Haskell v. Whitney, 12 Mass. 47; Dexter v. Young, 40 N.H. 130; Ferris v. Munn, 22 N.J. Law (2 Zab.) 161; Tyson v. Robinson, 25 N.C. (3 Ired. 333) 333; Zehner v. Lehigh Coal & Navigation Co., 187 Pa. 487, 41 A. 464; Shawhan v. Baker, 167 Mo. App. 25, 150 S.W. 1096.

two of the arbitrators. Moreover, the agreement provided that the "decision of the Board shall be conclusive, final and binding upon both parties without right of appeal," which, in the absence of a showing of "fraud, misconduct, or such gross mistake as would imply bad faith, or a failure to exercise an honest judgment," deprives the parties of any right to question the award or to re-try the issues determined by it. Haddad v. Bagwell, 317 S.W. 2d 781 (Tex.Civ.App., El Paso 1958, writ ref'd n. r. e.); Smith v. Barnett, 373 S.W.2d 762, 765, (Tex.Civ.App., Dallas 1963, no writ). The fourth point is overruled.

In appellant's fifth point he says the judgment is void "in that no writing in arbitration was ever submitted for signature and approval of Appellant's arbitrator, Jack P. Anderson" until after it had been filed. The judgment contains a finding that the arbitrators "went on the ground, viewed the premises, and after hearing the evidence, they ran the lines and made the measurements and they agreed upon their award, and reduced the same to writing, * * *." There being evidence to support such findings, we have no authority to disturb them. The fifth point is overruled.

■ By his sixth point Brown complains of the reopening of the hearing to permit Eubank to introduce certain deeds in evidence. This was a matter within the trial court's discretion, and we find no abuse thereof. The sixth point is overruled.

■ By his seventh point Brown complains of the taxing of all costs (exclusive of actual arbitration costs) against him, including costs incurred on the former appeal. Having been successful on that appeal, Brown should not be now taxed with the costs incident thereto, and to that extent the point is sustained and the judgment appealed from herein will be reformed. Sabine & E. T. Ry. Co. v. Johnson, 7 S.W. 378 (Tex.1888); 15 Tex. Jur.2d, Costs, § 88, p. 105.

In his eighth, ninth and tenth points Brown says the judgment appealed from is as uncertain as that reversed on the former appeal, being the result of palpable mistake, misunderstanding and gross error. We do not agree. The Court of Civil Appeals held, on the former appeal, Brown v. Eubank, 378 S.W.2d 707 (Tex.Civ.App., Tyler 1964, writ ref'd n. r. e.), that the field notes contained in the judgment, and hence the judgment itself, were defective in that there was no evidence locating Moore's northeast corner, which was used as the beginning point, and the judgment failed to tie that corner to any object that an officer executing a writ of possession could identify without exercising judicial functions.

■ However, it appears from the record now before us that, based upon the investigation made by the arbitrators, Moore's northeast corner was located by measurement from a certain railroad track, and it is our conclusion that the field notes describing the common boundary line of the parties, and hence the judgment, are sufficiently certain to enable the officer executing the writ of possession, at least with the aid of a competent surveyor, to ascertain the location of the line. This meets the well recognized test. 9 Tex. Jur.2d, Boundaries, § 85, p. 639; Page v. S. J. Kelley Const. Co., 256 S.W.2d 595, 597 (Tex.Civ.App., Galveston 1953, writ ref'd n. r. e.); Humble Oil & Refining Co. v. Owings, 128 S.W.2d 67, 75 (Tex. Civ.App., Fort Worth 1939, no writ); Whitmore v. McNally, 39 S.W.2d 633, 635 (Tex.Civ.App., Amarillo 1931, no writ). These points are also overruled.

The judgment is so reformed as to tax the costs of the former appeal against the appellee Eubank and all other costs (except the costs of the arbitration and survey, which were properly taxed equally against the parties pursuant to the agreement) are taxed against appellant Brown.

Reformed and, as so reformed, affirmed.